DIRECTOR, OFFICE OF WORKERS'
COMPENSATION PROGRAMS, U. S.
DEPARTMENT OF LABOR, and Joyce
Y. Roberson, Petitioners,

v.

BETHLEHEM STEEL CORPORATION,
Respondent.

No. 78-3168.

United States Court of Appeals,
Fifth Circuit.

June 25, 1980.

Joshua T. Gillelan, II, Gilbert T. Renaut, U.S. Dept. of Labor, Washington, D.C., for petitioners.

Mandell & Wright, Stephen M. Vaughan, Houston, Tex., for Joyce Y. Roberson.

O. J. Weber, Jr., Beaumont, Tex., for respondent.

Before BROWN, AINSWORTH and FRANK M. JOHNSON, Jr., Circuit Judges.

AINSWORTH, Circuit Judge:

Petitioners Joyce Y. Roberson and the Director of the Office of Workers' Compensation Programs, United States Department

of Labor, seek review of a final decision by the Benefits Review Board which denied disability payments to Roberson under the provisions of the Longshoremen's and Harbor Workers' Compensation Act (LHWCA), 33 U.S.C. §§ 901–950. The Board reversed the administrative law judge's award of compensation benefits for temporary total disability and permanent partial disability, granted pursuant to 33 U.S.C. § 908(b), (c)(21), on the ground that the order was not supported by substantial evidence on the record considered as a whole. Roberson and the Director urge this court to reverse the Board, contending that there was substantial evidence to support the order, and the Board impermissibly reweighed the evidence without deferring to the factual determinations of the administrative law judge. We hold that the Board did not err in concluding that there was not substantial evidence on the record as a whole to support the order of the administrative law judge, and we therefore affirm.

## I.

As found by the administrative law judge, Roberson was injured September 18, 1974 while working for Bethlehem Steel Corporation at its Beaumont, Texas shipyard. She was on a dry dock sandblasting under a ship which was being repaired when she backed up and placed one foot into a small hole, causing her to fall into a sitting position. She reported the accident and was taken to the St. Elizabeth's Hospital for medical attention. Her abrasions were cleaned and she was sent home. Roberson was paid compensation benefits from September 19 to October 1, 1974, and from October 14, 1974 to February 2, 1975.

The administrative law judge summarized Roberson's subsequent trips to medical doctors in the following manner:

Since the accident Claimant [Roberson] has consulted a number of doctors (Tr. 44–48). Dr. George B. Stephenson, orthopedic surgeon, Beaumont, Texas, examined Claimant on October 14, 1974. At that time, she complained of swelling inside her right knee and pain in her left ankle whenever she walked. She made no complaint of back pain (Tr. 72). On the basis of his examination Dr. Stephenson determined that Claimant "had a contusion to her right knee as a result of a fall . . . ." (Tr. 78). In his view, there was "no reason why she couldn't go back to work" (*Ibid*).

Dr. Joseph M. Barnhart, orthopedic surgeon, Houston, Texas, examined Claimant on February 4, 1975. At that time, Claimant stated that "her right leg ached all the way down from the hip and involved the entire foot from the tip of the great toes and equally in each of the other toes" (Post Ex. 1 pp. 6–7). He performed tests such as straight leg raising, pin touching, range of hip and knee motion and deep tendon reflex. He also obtained X-rays of the back and leg. Dr. Barnhart decided that Claimant's back and leg showed no evidence of an existing injury (Post Ex. 1 pp. 11–15).

The record contains the report of Dr. I. S. McReynolds, orthopedic surgeon, Houston, Texas, dated April 9, 1975 (Emp. Ex. 2). Dr. McReynolds relates that Claimant was examined by him and she complained "of aching, throbbing, and swelling of the right leg from the hip to the toes. The knee will buckle on her. She had pain in the pelvis and the pubic area" (*Ibid*). Dr. McReynolds conducted a series of physical motion tests and tooks X-rays. He states in his report that Claimant appeared to him to be exaggerating her condition and over-reacting in her complaints of pain (*Id.* at p. 2). He reports that there "is nothing present on physical examination at this time which would indicate to me that [Claimant] has any residual disabling abnormality as a result of her fall sustained in September 1974" (*Id.* at p. 3).

On March 16, 1976, nearly eighteen months after the claimed disabling accident and one month before the administrative hearing in this matter, Roberson visited a fourth doctor, Dr. Henry Alexander Reid, III, an orthopedic surgeon in Beaumont, Texas, and complained of back pain. Ro-

berson told the doctor "that approximately three years before she had injured her back and had had pain in her back and right leg since that time." She made no mention of her compensation claim. Based upon Roberson's subjective complaints, Dr. Reid diagnosed her condition as "a degenerative disc disease in the lower lumbar spine." Dr. Reid stated during his deposition that he found no objective evidence of disability.

Dr. Reid was repeatedly asked during his deposition to state a cause for Roberson's claimed pain. He was unable to do so. Counsel for Roberson at one point asked Dr. Reid if his diagnosis would be "consistent with a traumatic injury to the low back." The doctor replied:

> I find that very difficult to answer. I made a diagnosis of degenerative disc disease and injury can accentuate this process. She could have had a degenerative disc at the time and the injury could have accentuated the degenerative process or the injury may have had nothing to do with the problem she has. I can't say. I saw her much later and none of this was related to me.

The doctor consistently declined to relate Roberson's disc disease to her accident. "I can't say whether the problem she has now was caused by that accident or accentuated by it. I simply know what the lady told me at that time, and she related the onset of her back trouble to an accident she had."

With this medical evidence before him,[1] the administrative law judge concluded that Roberson's fall resulted in temporary total disability and permanent partial disability,

and made an award of compensation benefits.[2] In the course of his decision, the administrative law judge detailed at some length Roberson's lack of credibility. The judge noted that "[a]t the hearing, Claimant's description of her back and leg condition was generalized and indefinite." He stated that an analysis of Roberson's injury is "greatly hindered by (1) a lack of clear communication between Claimant and others and (2) Claimant's exaggeration of her pain and difficulty in moving around." Roberson's "lack of clear communication" was demonstrated, in the administrative law judge's view, by her "demeanor, unresponsive answers and lack of completeness in her testimony concerning her injury." Contradictions in Roberson's testimony were also noted.[3] The judge concluded that "[b]ased upon such contradictions and my observations of the Claimant while she testified, [I] find that her testimony, in part, lacks credibility."

In analyzing the medical evidence in the record, the administrative law judge noted that "Dr. Reid could not say whether there was any relationship between the Claimant's back condition and her accident at work." He stated, however, that Dr. Reid had testified that Roberson could have had a degenerative disc disease at the time of the accident, and the accident might have accentuated the degenerative process. In making his final determination of disability, the administrative law judge "accepted Dr. Reid's opinion based upon his subjective findings that Claimant has a disc injury," and did not "credit as controlling the views

---

1. Only Dr. Stephenson testified in person at the hearing before the administrative law judge. All other medical evidence of examining physicians was received in the form of depositions or written medical reports.

2. Roberson was awarded temporary total disability payments at the rate of $70.18 per week for the period from September 19, 1974 to June 4, 1975, and permanent partial disability payments of $22.28 per week thereafter, computed on an assumed 35% permanent partial disability. Past due payments were to be made in a lump sum, together with 6% interest. In addition, the employer was ordered to pay $1,436.50 in attorney's fees.

3. The administrative law judge noted the following contradiction in Roberson's testimony:

> On the one hand, Claimant has applied for employment indicating that she is willing to try to work for the Employer, and she stated in her unemployment application filed with the Texas Employment Commission that she is "presently able to work" (Tr. 113; Emp. Ex. 8). On the other hand, she testified at the hearing that she could not engage in any physical activities or even walk as far as half a block (Tr. 111–112).

of Drs. Stephenson, Barnhart and McReynolds, based upon their lack of objective findings, that Claimant has no injury."

The employer appealed the order to the Benefits Review Board, contending, among other things, that the award of disability compensation was not supported by substantial evidence on the record as a whole. The Board reversed the administrative law judge. Roberson and the Director of the Office of Workers' Compensation Programs then petitioned this court for review of the Board's decision, contending that the Board erroneously applied the substantial evidence test in reversing the administrative law judge's order.

## II.

■ As an initial matter, we are faced with the standing of the Director to seek review of the Benefits Review Board's decision. In 1972, Congress amended the LHWCA to provide a two-step process for review of any compensation order entered under the LHWCA by a duly appointed hearing officer. 33 U.S.C. § 921. Pursuant to section 921, "any party in interest" may appeal the decision of the hearing officer to the Benefits Review Board. 33 U.S.C. § 921(b). Subsequently, "[a]ny person adversely affected or aggrieved by a final order of the Board" may seek review of that order in the United States court of appeals. 33 U.S.C. § 921(c). As we detailed at length in *Director, Office of Workers' Compensation Programs v. Donzi Marine, Inc.*, 586 F.2d 377, 382 (5th Cir. 1978), the Director has "no interest on his part, either pecuniary or administrative, which is adversely affected by the decision of the Board in this case." Hence, the Director is not a person "adversely affected or aggrieved" by the Board's order, 33 U.S.C. § 921(c), and may not petition this court for review of that order.[4] *Fusco v. Perini North River Associates*, 601 F.2d 659, 670 (2d Cir. 1979);

*I.T.O. Corporation of Baltimore v. Benefits Review Board*, 542 F.2d 903, 909 (4th Cir. 1976), *vacated sub nom. Adkins v. I.T.O. Corp. of Baltimore*, 433 U.S. 904, 97 S.Ct. 2967, 53 L.Ed.2d 1088, *rev'd on remand on other grounds*, 563 F.2d 646, 648 (1977). We therefore proceed to consider Roberson's contentions as contained in her petition for review.

## III.

■ Under the provisions of 33 U.S.C. § 921(b)(3) the Benefits Review Board is "authorized to hear and determine appeals raising a substantial question of law or fact taken by any party in interest from decisions with respect to claims of employees under [the LHWCA]." The Board's scope of review, however, is restricted. "The findings of fact in the decision under review by the Board shall be conclusive if supported by substantial evidence in the record considered as a whole." 33 U.S.C. § 921(b)(3). The LHWCA does not set forth a standard of review for use by this court in reviewing the decisions of the Board. However, "it is evident that we are to review only for errors of law, and to make certain that the Board adhered to its statutory standard of review of factual determinations." *Presley v. Tinsley Maintenance Service*, 529 F.2d 433, 436 (5th Cir. 1976); *Army and Air Force Exchange Service v. Greenwood*, 585 F.2d 791, 795–96 (5th Cir. 1978). The question before this court therefore is whether the Board properly applied the "substantial evidence" test in reviewing the decision of the administrative law judge.

"Substantial evidence in the record considered as a whole" is a strict and limiting standard of review. "Thus the Board does not have authority to engage in a *de novo* review of the evidence, or to substitute its views for that of the administrative law

---

4. The Director, in his reply brief, argues that *Donzi Marine, supra*, is inapplicable to this case as it is not a "coverage case" but one involving "the allocation of the burdens of proof and persuasion under the Longshoremen's Act and the magnitude of those bur-

dens." Reply Brief for the Federal Petitioner at p. 2. We fail to see how this distinction heightens the Director's "administrative interest" in this case in such a manner as to distinguish it from *Donzi Marine*.

judge." *Presley v. Tinsley Maintenance Service*, 529 F.2d 433, 436 (5th Cir. 1976). However, "[t]he substantiality of evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. N.L.R.B.*, 340 U.S. 474, 488, 71 S.Ct. 456, 464, 95 L.Ed. 456 (1951). The evidence supporting the decision or order under review "must do more than merely create a suspicion of the existence of facts upon which the order is based." *N.L.R.B. v. A.O. Fuller Super Markets, Inc.*, 374 F.2d 197, 200 (5th Cir. 1967). In short, the review "is not to be a mere rubber-stamping of the [administrative law judge's] order when the reviewing Court is unable to conscientiously conclude that the evidence supporting such decision is substantial." *Goins v. Noble Drilling Corporation*, 397 F.2d 392, 394 (5th Cir. 1968).

On the present record we cannot say that the Benefits Review Board erred when it determined that the administrative law judge's award of disability compensation was not supported by substantial evidence on the record as a whole. This case bears a striking resemblance to an earlier LHWCA case from this circuit, *Goins v. Noble Drilling Corporation*, 397 F.2d 392 (5th Cir. 1968). In *Goins*, nine of the eleven doctors who testified stated that the claimant was in good physical condition and able to return to work. Two doctors, however, presented some evidence of disability. The Deputy Commissioner of the Bureau of Employees' Compensation [5] awarded the claimant compensation under the LHWCA, and the employer sought review in district court.[6] The district court reversed the Deputy Commissioner, concluding that the two medical reports favorable to the claimant did not constitute substantial evidence. One report was found to be "nothing more than a collection of medical terms woven around the thread of the patient's own statements about the nature of his accident and his persistent complaints." *Goins, supra*, 397 F.2d at 394. As for the other report, the district court stated that "[a] less concrete and conclusive report could hardly be imagined." *Id.* We affirmed the district court on appeal, noting that review under the "substantial evidence" standard was to be more than a "mere rubber-stamping of the Deputy Commissioner's order." *Id.*

In this case the Benefits Review Board, over the dissent of one member, held that there was not substantial evidence on the record considered as a whole to support an award of disability compensation. The Board, like the district court in *Goins, supra*, noted that the great preponderance of the medical evidence in the case militated against Roberson. The Board recognized that Dr. Reid gave the only medical testimony favorable to Roberson's case. The Board further noted that Dr. Reid's initial examination of Roberson came eighteen months after the claimed injury whereas the other doctors had examined her within seven months of her fall. The Board also emphasized that Dr. Reid was "not informed by claimant on her initial visit to him that she was seeking evaluation as a result of an employment related injury." The Board then made the following analysis of the evidence supplied by Dr. Reid's deposition:

> In reaching his opinion as to the extent of claimant's injury and disability, Dr. Reid relied solely on claimant's subjective complaints. Subjective complaints are simply those complaints of pain and other symptoms which are related by the patient to the doctor. In response to questioning, Dr. Reid acknowledged that he had not relied on any objective findings in reaching his diagnosis. The evidentiary value of Dr. Reid's testimony in this regard is,

---

5. Prior to the 1972 amendments of the LHWCA, claims were heard in the first instance by a Deputy Commissioner of the Bureau of Employees' Compensation. 33 U.S.C. § 921 (1970) (amended 1972). Initial hearings are now held before an administrative law judge. 33 U.S.C. § 919(d).

6. Before the 1972 amendments to the LHWCA, review of the initial administrative decision was in the district court. 33 U.S.C. § 921 (1970) (amended 1972). Such appeals are now brought before the Benefits Review Board. 33 U.S.C. § 921(b).

therefore, questionable. This is particularly so when viewed with the fact that the administrative law judge had serious doubts relative to claimant's credibility. . . . It does not follow that the administrative law judge, who expressed serious doubts about claimant's credibility after having personally observed her, could then proceed to base his conclusions regarding claimant's disability upon the opinion of a doctor who had relied solely upon claimant's complaints to form his opinion that the claimant was disabled. Certainly, if the administrative law judge had doubts with respect to claimant's credibility, then testimony which was given by Dr. Reid and which relied exclusively upon claimant's complaints cannot be viewed as substantial evidence.

Apart from its reliance on the subjective complaints of the discredited claimant, the Board also commented upon the materiality of Dr. Reid's testimony.

[T]he testimony of Dr. Reid cannot be relied on because of its equivocations and the failure of Dr. Reid to make any connection between claimant's injury and any subsequent physical impairments which claimant may have suffered. . . . Dr. Reid's testimony is also full of examples of his inability to state a definite opinion with regard to claimant's physical limitations. . . . In the Board's opinion, medical evidence, such as Dr. Reid's testimony, which fails to state with any degree of certainty an opinion regarding claimant's injury and subsequent physical impairments does not constitute substantial evidence.

We are unable to conclude that the reasoning of the Board, set forth above, is erroneous. Like the district court in *Goins, supra,* the Board considered evidence in the record which detracted from the conclusion of the administrative law judge. The Board properly determined that, on the record as a whole, the administrative law judge's order was not supported by substantial evidence. *See Todd Shipyards, Inc. v. Fraley,* 592 F.2d 805, 810–11 (5th Cir. 1979). The Board did not exceed its statutory authority in reviewing compensation awards under the LHWCA, 33 U.S.C. § 921(b), and must therefore be

AFFIRMED.