DIRECTOR, OFFICE OF WORKERS' COMPENSATION PROGRAMS, UNITED STATES DEPARTMENT OF LABOR, Petitioner,

v.

NEWPORT NEWS SHIPBUILDING AND DRY DOCK COMPANY, Respondent.

No. 81–1725.

United States Court of Appeals, Fourth Circuit.

Argued Jan. 7, 1982.

Decided April 13, 1982.

Joshua T. Gillelan, II, Washington, D. C. (T. Timothy Ryan, Jr., Sol. of Labor, Donald S. Shire, Associate Sol., Marianne Demetral Smith, U. S. Dept. of Labor, Washington, D. C., on brief), for petitioner.

Junius C. McElveen, Jr., Washington, D. C. (David D. Kadue, Seyfarth, Shaw, Fairweather & Geraldson, Washington, D. C., on brief), for respondent.

Before MURNAGHAN and ERVIN, Circuit Judges, and WILLIAM W. WILKINS, United States District Judge, sitting by designation.

ERVIN, Circuit Judge:

This is an appeal by the Director of the Office of Workers' Compensation Programs (the Director) from a ruling of the Benefits Review Board (the Board) in the case of Eugene W. Langley. The main issue is whether the special fund established under section 8(f) of the Longshoremen's and Harbor Workers' Compensation Act (the Act), 33 U.S.C. § 908, should pay a portion of the compensation due to Langley for his permanent total disability because a pre-existing permanent partial disability contributed to his total disability. The Board held that the special fund should be used for part of the compensation due Langley in this case. For the reasons stated below, we reverse and remand the case for further proceedings.

I.

Eugene W. Langley was employed by the Newport News Shipbuilding and Dry Dock Company (the employer) for almost thirty-nine years as a sheet metal worker and foreman. The parties stipulated and the Administrative Law Judge (ALJ) found that Langley suffers from work-related asbestosis, that he has been permanently and totally disabled since December 4, 1979, and that his asbestosis contributes to his present disability.

In August and September 1976, Langley went to his doctor complaining of edema (swelling) in his legs and feet. The condition did not affect his work substantially and does not appear to have been considered very serious. No diagnosis or explanation for the swelling was made during these visits. The condition worsened, however, and in April 1977, Langley was hospitalized. At this time, tests were conducted and Langley was diagnosed as suffering from nephrotic syndrome, which is a serious kidney disease. During this hospitalization chest x-rays were taken and asbestosis was diagnosed.[1] Langley was released from the hospital on May 10, 1977, but was readmitted on June 26 because his kidney condition was not responding to treatment. Excess fluid remained in his body from the chest down. Shortly after he was released the second time on July 16, 1977, Langley began experiencing chest pain and shortness of breath. He was hospitalized a third time from July 22 to July 27, 1977. At this time, his excess fluid had been reduced but massive proteinuria[2] persisted. Chest x-rays and a CAT scan on July 22 revealed substantial left pleural effusion which suggested the possibility of mesothelioma, a tumor of the pleura.

After being released, Langley continued his treatment for nephrotic syndrome and returned to his regular job at the shipyard. On December 13, 1978, Dr. Tomkins, Langley's physician, wrote the Shipyard Medical Director recommending that Langley be retired on disability as soon as possible. In his letter Dr. Tomkins mentioned both the asbestosis and "chronic nephritis." Langley retired on December 19, 1978, and filed for disability benefits, giving rise to this case.

■ Section 8(f) of the Act provides that when an employee becomes permanently totally disabled or dies following an injury, and a pre-existing permanent partial disability contributed to the permanent total disability or death, the employer shall pay compensation for only 104 weeks, and the remainder of the compensation is paid from a special fund set up under section 44 of the Act. The chief rationale for this provision is to discourage discrimination in hiring and retaining handicapped workers. *See C & P Telephone Co. v. Director, OWCP*, 564 F.2d 503, 512 (D.C.Cir.1977). Section 8(f), therefore, applies if a claimant suffers from a pre-existing permanent partial disability which is manifest to the employer either at the time of initial hire or during the period when the claimant is retained, and the pre-existing disability combines with a subsequent work-related injury to render the claimant more disabled than he would have been because of the subsequent injury alone.

The ALJ found that because Langley's nephrotic syndrome was not manifest at the time of his asbestosis diagnosis, the employer was not entitled to the advantages of section 8(f) of the Act. The ALJ also found that Langley's permanent total disability was solely the result of asbestosis and that section 8(f), therefore, did not apply. A two-member majority of the Board reversed, holding that under the required "liberal application" of the requirement that the pre-existing disability be manifest, Langley's nephritis was manifest prior to the diagnosis of asbestosis. Further, the majority of the Board found that there was not substantial evidence that asbestosis was the sole cause of Langley's permanent total disability. Finally, the majority held that Langley's work-related exposure to asbestos and severe shortness of breath after the initial diagnosis of asbestosis constituted a subsequent disability under section 8(f). Thus, the majority held that section 8(f) applied regardless of whether Langley's nephritis was found to be a manifest pre-existing condition.

One Board member dissented, arguing that the majority's reversal of the ALJ's findings constituted a reweighing of the

---

1. More precisely, the nephrotic syndrome diagnosis was made on April 26, 1977, the day Langley was hospitalized, and the asbestosis diagnoses were made on April 27 and 28.

2. Proteinuria is a kidney malfunction where large amounts of protein are expelled by the body through the urine.

evidence, that the ALJ's findings were supported by substantial evidence, and that because the third issue of asbestosis being the pre-existing condition was not raised below, the majority exceeded its authority in ruling on that issue. The dissenter recommended remanding the case for a determination of the third issue.

## II.

The employer first challenges the Director's standing to pursue this appeal arguing that the Director is not a "person aggrieved" under 33 U.S.C. § 921(c). Section 921(c) of the Act provides that

> Any person adversely affected or aggrieved by a final order of the Board may obtain a review of that order in the United States Court of Appeals for the circuit in which the injury occurred . . . .

33 U.S.C. § 921(c). In *I.T.O. Corp. of Baltimore v. Benefits Review Board*, 542 F.2d 903 (4th Cir. 1976)(*en banc*), this court stated that to meet the statutory or constitutional standing requirements, one must have suffered "injury in fact, economic or otherwise." 542 F.2d at 907 (quoting *K. Davis, Administrative Law* (1970 Supp.) § 22.00–1 at 706). The court in *I.T.O. Corp.* thus rejected the Director's argument that he was

> directly affected in his official capacity by the correctness of the Board's decision involving the proper scope of coverage of the Act with whose administration he is charged as the designee of the Secretary of Labor.

The specific issue in *I.T.O. Corp.* was the extent of coverage of certain amendments to the Act. *Accord Director, OWCP v. Bethlehem Steel Corp.*, 620 F.2d 60 (5th Cir. 1980); *Fusco v. Perini North River Associates*, 601 F.2d 659 (2d Cir. 1979).

The Director argues here, however, that the Act established a special fund for payment of benefits in certain circumstances, that the Secretary of Labor is the custodian of that fund and that he, as Director, is the administrator of that fund. We agree that in his position as administrator of the fund, the Director has an obligation to protect it from unjustified claims, *see Director, OWCP v. Donzi Marine, Inc.*, 586 F.2d 377 (5th Cir. 1978),[3] and certainly has more of a direct interest in this case than the Director did in *I.T.O. Corp.*

The United States Court of Appeals for the District of Columbia recently has held that the Director has standing to appeal because of his general administrative responsibility and his financial interest in the special fund. *Director OWCP v. National Van Lines, Inc.*, 613 F.2d 972, 977 n.6 (D.C. Cir.1979). Additionally, the Supreme Court has granted the Director certiorari in a case in which the standing issue apparently was not raised by the parties. *Director, OWCP v. Rasmussen*, 436 U.S. 955, 98 S.Ct. 3068, 57 L.Ed.2d 1120 (1978).

Further, in 1977 Congress indicated its intent to allow the Director standing to protect the interests of the Secretary of Labor in the appeal of claims whether or not the Secretary had a direct financial interest. The Senate Human Resources Committee Report accompanying the 1977 amendments to the Federal Coal Mine Health & Safety Act, 30 U.S.C. §§ 901–960, stated as follows:

> Some question has arisen as to whether the adjudication procedures applicable to black lung claims *incorporating various sections of the amended Longshoremen's and Harbor Workers' Compensation Act* confers standing upon the Secretary of Labor or his designee to appear, present

---

3. In *Donzi Marine*, the fifth circuit stated:

   On one hand, the Act expressly provides that the contents of the fund "shall not be money or property of the United States," 33 U.S.C. § 944(a)(1976). Thus, disbursements from the fund are somewhat different in character from disbursements of true government funds under the FCMHSA. On the other hand, the payments into the fund include fines levied and collected by the government and a government loan, scheduled to be repaid by 1978, provided initial support. . . . Furthermore, the Director, as administrator of the fund, may well have an implicit obligation to protest unjustified claims against it and to prevent unwarranted dissipation of its contents.

   586 F.2d at 380 n.12.

evidence, *file appeals* or *respond to appeals* filed with respect to the litigation and appeal of claims. *In establishing the Longshore Act procedures it was the intent of this Committee to afford the Secretary the right to advance his views* in the formal claims litigation context *whether or not the Secretary had a direct financial interest* in the outcome of the case. *The Secretary's interest as the officer charged with the responsibility for carrying forth the intent of Congress with respect to the Act should be deemed sufficient to confer standing* on the Secretary or such designee of the Secretary who has the responsibility for the enforcement of the Act to actively participate in the adjudication of claims before the Administrative Law Judge, Benefits Review Board, and *appropriate United States Courts.*

S.Rep.No. 95–208, 95th Cong., 1st. Sess. 21–22 (1977) (emphasis added). Thus, the legislative and judicial development since *I.T.O. Corp.* was decided and the fact that the Director in this case has an additional interest in protecting the fiscal integrity of the special fund convinces us that the Director has standing to appeal the Board's decision.[4]

Our conviction is strengthened by the obvious fact that only the Director has any real interest in protecting the fund against unjustified payments. It is to the financial advantage of the employer for payments to be taken in part from the fund, and the employee involved is interested only in being paid, not in the source from which his payments come.

### III.

Three requirements must be met before an employer is entitled to section 8(f) relief. First, there must be an existing permanent partial disability. Second, the disability must be manifest as defined by pertinent case law. And third, the pre-existing disability must combine with the subsequent disability and contribute to the resulting permanent total disability, 33 U.S.C. 908(f). *See generally, Director, OWCP v. Universal Terminal & Stevedoring Corp.,* 575 F.2d 452 (3d Cir. 1978); *Equitable Equipment Co., Inc. v. Hardy,* 558 F.2d 1192, 1195 n.6 (5th Cir. 1977); *C & P Telephone Co. v. Director, OWCP,* 564 F.2d 503 (D.C.Cir.1977).

The ALJ's holding that section 8(f) did not apply to this case was based on two alternative grounds: that Langley's pre-existing nephrotic syndrome was not manifest at the time he was rehired and that the nephrotic syndrome did not contribute to his permanent total disability. Of course, the Board and this court must affirm the decision of the ALJ if there is substantial evidence to support his findings considering the record as a whole. 33 U.S.C. § 921(b)(3). The record clearly shows that the ALJ's conclusion that Langley's nephrotic syndrome was not manifest to the employer when he was rehired is supported by substantial evidence.[5]

---

**4.** The employer also argues that the Director does not have standing for this appeal because he did not take part in the proceedings below and because he makes arguments on appeal that were not made below. Neither of these contentions has merit. First, the Director had no interest in appealing the ALJ's decision because the ALJ held that section 8(f) did not apply and no disbursement from the fund was ordered. The Director's interest in protecting the fund was not triggered until the Board reversed the ALJ. On the second contention, the employer argues that the allegation that the employer deliberately exposed Mr. Langley to asbestos after it knew he had asbestosis is a new issue raised on appeal. This allegation is not a new argument. The two basic arguments the Director makes are that there is substantial evidence to support the ALJ's decision and that

the Board's "liberal" application of section 8(f) is inappropriate. The Board itself raised a third issue to which the Director's allegation is directed. The Director, therefore, does not raise new issues in this appeal.

**5.** The requirement that the pre-existing disability be manifest to the employer is not statutory, but was imposed judicially to implement the congressional intent to discourage discrimination in hiring and retaining handicapped workers. The courts recognize that the existing permanent partial disability must have been manifest to the employer prior to the injury that is the basis for the claim in order for the discrimination to occur. *American Mutual Ins. Co. v. Jones,* 426 F.2d 1263, 1267 (D.C.Cir. 1970); *Dillingham Corp. v. Massey,* 505 F.2d 1126, 1128 (9th Cir. 1974). The opportunity to

In reversing the ALJ, a majority of the Board noted that the expert witness stated with hindsight that edema was a sign of nephrotic syndrome, and concluded that section 8(f) should be construed liberally. *See Maryland Shipbuilding & Drydock Co. v. Director, OWCP*, 618 F.2d 1082 (4th Cir. 1980). The Board, however, erroneously uses this "liberal construction" theory to re-weigh the evidence. The basic question remains whether there is substantial evidence, viewing the record as a whole, to support the ALJ's findings. The Board simply failed to apply the substantial evidence test.

Similarly, there is substantial evidence in the record to affirm the ALJ's finding that nephrotic syndrome did not contribute to Langley's total permanent disability, although this issue appears to be a closer question. The chief expert witness testified that he could not evaluate the relative contribution of the asbestosis and nephrotic syndrome to Langley's disability. Langley testified his shortness of breath made him unable to work. The expert witness agreed that this was the disabling factor and stated that the disability possibly was due to asbestosis alone, but that it also was possible nephrotic syndrome or other factors contributed to the disability. The evidence appears inconclusive, or "unclear" as the majority of the Board describes it. In this situation, the majority again relied on a "liberal construction" of section 8(f) to hold that nephrotic syndrome did contribute to the resulting disability. The employer, however, has the burden of persuading the fact finder that the disability was in part caused by the pre-existing condition. Be-

cause the evidence was inconclusive, the ALJ properly found that the element of contribution had not been proved.

Finally, we must review the majority's conclusion that Langley suffered from pre-existing asbestosis that was manifest to the employer and that contributed to his permanent disability. Apparently, the majority used the aggravation doctrine to apply section 8(f) relief even though the supposed pre-existing condition was the same disease as the condition causing the permanent disability.[6] To support its theory, the majority quoted testimony from the expert witness to the effect that once asbestosis is diagnosed continued exposure to asbestos does generally aggravate the condition. They further took judicial notice of the fact that asbestosis is "a progressive disease aggravated by further exposure to asbestos fibers."

This issue was never presented to or ruled upon by the ALJ. Because the ALJ is supposed to be the factfinder for claims filed under the Act, it was not proper for the Board to rule upon this issue first. We agree with the dissenting Board member that the ALJ should have an opportunity to consider the issue first.

## IV.

The ALJ's findings that section 8(f) should not apply in this case because Langley's pre-existing condition was not manifest and because the condition did not contribute to his permanent disability are supported by substantial evidence. The Board's decisions on those issues, therefore, are reversed. The issue whether asbestosis as a pre-existing condition could trigger

discriminate against the handicapped employee does not require that the employer have actual knowledge of the pre-existing condition. *Dillingham Corp. v. Massey, supra.*

6. The majority opinion stated:

An examination of the record reveals that claimant's asbestosis was detected during his hospitalizations in April, June and July of 1977. Claimant testified that his last day of work was December 19, 1978, and that he was continuously exposed to asbestos millboard, asbestos cloth and asbestos dust. On the basis of this evidence it is apparent that

claimant suffered a pre-existing disability of asbestosis, which was manifest to his employer, and that claimant was nevertheless retained in his employment where he was re-injured by subsequent exposure to asbestos particles. Therefore, if it can be established that his re-injury aggravated claimant's existing degree of asbestosis to render him more disabled, employer would be entitled to Section 8(f) relief. *Ashley*, 12 BRBS 518; *Carey v. Cargill, Inc.*, BRBS, BRB No. 79–377 (June 10, 1981).

application of section 8(f) in this case is remanded to the ALJ for factual findings.

REVERSED AND REMANDED.