**Edward J. SYLVESTER, Petitioner,**

**v.**

**DIRECTOR, OFFICE OF WORKERS' COMPENSATION PROGRAMS, UNITED STATES DEPARTMENT OF LABOR, and Bethlehem Steel Corporation, Respondents.**

No. 81–4285.

United States Court of Appeals,
Fifth Circuit.

July 26, 1982.

Gerald J. Goodwin, Houston, Tex., for petitioner.

John D. Reinstra, Jr., Dewey Gonsoulin, Beaumont, Tex., for Bethlehem Steel Corp.

Before GEE and JOHNSON, Circuit Judges, and VAN PELT *, District Judge.

* District Judge of the District of Nebraska, sitting by designation.

GEE, Circuit Judge:

Sylvester, a first-class welder with Bethlehem Steel, suffered an episode of "chemical bronchitis" in 1975. He returned to work some months later but in April 1976 went home feeling dizzy and nauseated. He was subsequently admitted to the hospital complaining of chest pains and dyspnea. After release from the hospital and outpatient treatment, Sylvester experienced difficulties in finding reemployment. His applications with Bethlehem Steel were rejected, allegedly because they were incomplete. Sylvester filed a claim for workmen's compensation benefits under the Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C. § 901, *et seq.* A hearing before an administrative law judge (ALJ) was held on January 8, 1979.

The ALJ awarded benefits for temporary total disability from April 14, 1976, to January 28, 1977, the date when claimant's treating physician, Dr. Benski, released him to return to work. Although the ALJ concluded that claimant had not suffered permanent medical impairment, he found that the employability of the claimant was conditioned upon his working in a well-ventilated area, that such employment restriction "might" reduce claimant's employment prospects on the open market, and that the employment restriction was the result of the April 13, 1976, injury. The ALJ therefore also held that Sylvester was entitled to permanent partial disability benefits based on a permanent reduction of $21.77 per week in his wage-earning capacity.

Sylvester's employer appealed to the Benefits Review Board. The Board, over the dissent of one member, affirmed the award of temporary total disability benefits but reversed and vacated the ALJ's finding of permanent partial disability. Sylvester here appeals, seeking reinstatement of the ALJ's original finding of permanent partial disability. We affirm.

We have had numerous opportunities to discuss the provisions of 33 U.S.C. § 921(b)(3), under which the Benefits Review Board is "authorized to hear and determine appeals raising a substantial question of law or fact taken by any party in interest from decisions with respect to claims of employees under [the LHWCA]." The Board's "strict and limiting" standard of review of an ALJ's findings in LHWCA actions is well established. *Director, Office of Workers' Compensation Programs v. Bethlehem Steel Corp.*, 620 F.2d 60, 63 (5th Cir. 1980). Under 33 U.S.C. § 921(b)(3): "The findings of fact in the decision under review by the Board shall be conclusive if supported by substantial evidence in the record considered as a whole." Although the LHWCA does not articulate a standard of review for use by this court in reviewing the decisions of the Board, we have noted that

> We are to review only for errors of law, and to make certain that the Board adhered to its statutory standard of review of factual determinations. ... [T]he Board does not have authority to engage in a de novo review of the evidence, or to substitute its views for that of the administrative law judge.... [T]he findings of the administrative law judge must be accepted unless unsupported by substantial evidence in the record considered as a whole.

*Presley v. Tinsley Maintenance Service*, 529 F.2d 433, 436 (5th Cir. 1976) (citations omitted). The question on appeal is whether the Board properly applied the "substantial evidence" test when it reversed the ALJ's finding of permanent partial disability.

After a thorough review of the record below, we cannot say that the Benefits Review Board erred when it determined that "the medical testimony uniformly indicates that claimant suffers neither an underlying condition which was exacerbated or aggravated by the employment, nor a permanent impairment as a result of the incident which occurred in April, 1976." The Board correctly summarized the medical evidence presented. Sylvester underwent an extensive series of diagnostic tests under the direction of several physicians after April 1976. The tests performed included complete pulmonary function studies, blood-gas exchange studies, lung scans, partial tread-

mill studies, and a bronchoscopy. These physicians uniformly testified that the tests revealed no permanent or semipermanent impairment or underlying welding-fume-induced disorder. They found no objective basis for Sylvester's complaints of breathlessness and dizziness. Specifically, tests performed by Dr. Schweppe, head of the pulmonary disease section at a Houston hospital, revealed normal breath sounds, normal x-rays, and normal expiratory flow of air. Dr. Schweppe found no evidence of a bronchial injury or obstructive pulmonary disease nor any evidence of silicosis, asbestosis, arc welders disease, or allergic reaction to welding fumes. Dr. Middleton, a specialist in internal medicine, likewise found no evidence of any lung problems, and his laboratory tests revealed no disability due to welding fumes. Dr. Benski drew identical conclusions but found, in 1976, evidence of possible emphysema, which he related solely to Sylvester's then long-standing cigarette smoking habit. Even the ALJ concluded that:

> The only evidence of any physical disability of the claimant is the subjective complaint of occasional shortness of breath, chest pains and fatigue on exertion. Such subjective complaints have not been confirmed by Drs. Benski, Schweppe or Middleton as being the result of any lung impairment or lung disease. Therefore I am constrained to find that the claimant has no permanent medical impairment and has the physical capacity to perform all the duties and requirements of a welder.

The ALJ's determination that Sylvester nonetheless suffered a permanent partial disability after January 28, 1977, was based on medical opinions that, according to the ALJ, were "in agreement that the employability of this claimant is conditioned upon him [sic] working in well-ventilated areas . . . ."

As the Board correctly points out, the examining physicians were not, however, unanimous in recommending that Sylvester return to work only in well-ventilated areas. Dr. Schweppe, the specialist to whom Sylvester was referred by his treating physician, repeatedly testified that he would not place any medical restrictions on Sylvester's work activities and that he had recommended only that Sylvester stop smoking cigarettes. Dr. Schweppe also testified that had Sylvester been able to work as a welder for years without complaint, it would be "unlikely" for him to suffer an allergic or acute reaction to welding fumes. He stated that Sylvester's subjective symptoms

> did not corrolate with any ongoing exposure, nor with any objective data of continued injury. And based on these problems, I told Mr. Sylvester that I could not make a final recommendation about reexposure because I had not seen it documented.

> Nor did I make any other recommendations, except to attempt to rehabilitate, because I did not feel that he was totally disabled, or disabled in any fashion.

Another examining physician, Dr. Polachek, also did not recommend restricting Sylvester's welding activities to well-ventilated areas. Moreover, the two physicians who did so recommend were extremely cautious in their evaluations. Thus, Dr. Benski testified that his recommendation of adequate ventilation was applicable to all welders.[1] Dr. Middleton's recommendation was also equivocal. He specifically testified that his recommendation, which he would have

---

1. Q  Insofar as you have indicated, you would recommend that Mr. Sylvester stay away from welding fumes or chemicals, isn't it fair to say, Doctor, that you would give him the same recommendations whether or not he had exposure on these particular dates we're concerned with, April of 1976 or June of 1975, that would be good medical advice to give anyone with any kind of lung complaints?

A  To avoid allergents, yes.

Q  You're not stating that he has incurred any additional physical or medical restrictions on his activities because of exposure to fumes in April of 1976?

A  No, he has not.

Q  You're not saying that he has incurred any additional physical restrictions because of any exposure to fumes in July or June of 1976?

A  No, he didn't.

made to any welder, was based on Sylvester's subjective complaints and not on any objective evidence of infirmity.[2]

The Board was also entitled to doubt the ALJ's finding—essential to his award of permanent partial disability—that the pre-

2. Q  Okay. Now, in your report, doctor, you indicated that Mr. Sylvester could return to work as a welder; is that correct?
A  That's correct.
Q  As of what date?
A  I thought he was able to work as of the time I saw him.
Q  Now, you said in your report that he ought to either weld in open areas or in a closed area with some sort of forced air supply; is that correct?
A  That's correct.
Q  Is that a recommendation that you would have for any welder?
A  The recommendation I make to any welder I see, whether he has complaints that may be referred to the pulmonary system or not.
Q  My question is: Did you impose this as a restriction on Mr. Sylvester because of some pulmonary problem he had or was that simply a recommendation you made to him as a welder?
A  One, Mr. Sylvester is a welder. He's trained as a welder. He should follow precautions. Second, he's given a history of not one but two apparent episodes, as I recall it, and certainly it's incumbent on him to take even more—be more careful about the precautions he follows under those circumstances because repeated injury may result in some permanent damage.
Q  Apart from Mr. Sylvester, did you see any evidence of any damage to Mr. Sylvester's pulmonary system from exposure to welding fumes?
A  As of that time, no.
Q  The only basis you have for saying that he had had two prior problems—
A  The history of Mr. Sylvester.
Q  —is the history?
A  That's correct.
Q  And that's what the patient told you?
A  That's correct.
Q  And, again, your recommendation that he weld in open areas or with some sort of forced air supply would be a recommendation that you would make to any welder including Mr. Sylvester?
A  I think particularly one who has given that type of history. And the history—one of the things we do try to evaluate is how much truth there is to the patient in what he has told you. And sometimes we may accept as being truth more than is really there.

cautions applicable to Sylvester, "if known to a prospective employer, might well reduce his prospects of employment in the open market." The objective evidence, on the contrary, suggested that well-ventilated welding jobs were available.[3]

But I might turn it around and say if you came to me as a patient and I didn't believe what you told me, I don't think you would like it very much.
Q  I'm sure that's right, doctor.
Would you put any percentage or degree of disability on Mr. Sylvester's working ability as a result of his exposure to welding fumes in the past?
A  I noticed that my report was addressed to Mr. Hollis at that time, the Deputy Commissioner here I think was Mr. Hollis, who some years ago insisted that I use the material published by the American Medical Association Guide to a Permanent Disability—or Guide to Permanent Impairments, I believe is the term.
And certainly under that or any other reference to permanent disability, I can't say that he has any disability. I can't put it other than to say zero percent.

3.  Thus, the ALJ himself noted:
For it to be determined that this disability is a total permanent disability the evidence must establish that the Claimant by reason of this disability is unable to secure regular fulltime employment as a welder under the conditions placed upon him by the medically described conditions. This the evidence does not establish. The Claimant in a deposition testified that Bethlehem Steel, this Employer, has welding jobs where one would have adequate ventilation and also testified that they would have it at other places of employment for welders. It should be noted that the testimony of the Claimant at the hearing was contradictory and I am accepting the testimony which was given by this Claimant at the time of the deposition to be more accurate. Mr. Dwain O. Solly, welding foreman, of the Employer herein testified that he has held this position prior to April 13, 1976 and thereafter. Mr. Solly further testified that there have been jobs available since January of 1977 under the prescribed medical conditions with such employment being in well ventilated areas. That Bethlehem Steel furnishes such employment to welders and that if respirators are needed they will [be] supplied upon request. This evidence and the record as a whole does establish that there was and has been work available to this Claimant under these conditions. On one occasion processes were set in play to make a particular job available to this Claimant but problems arose as to the technicalities of a job application and the point was never reached as to a specific and

This case thus bears a striking similarity to *Director, Office of Workers' Compensation Programs v. Bethlehem Steel Corp.,* supra. In that case, the Board had reversed the ALJ's award, and the claimant contended to this court, as here, that the Board had impermissibly reweighed the evidence and failed to defer to the ALJ's factual findings. Three doctors in *Bethlehem Steel* had found no reason why the claimant, having fallen on the job, could not return to work. A fourth doctor diagnosed a degenerative disc disease based on the claimant's subjective complaints after the fall; however, the doctor found no objective evidence of disability. The ALJ found temporary total and partial permanent disability, and we affirmed the Board's reversal of the ALJ's findings. As in this case, the Board in *Bethlehem Steel* had to weigh the great preponderance of the medical evidence, including the evidence of the fourth doctor, whose testimony was favorable to the claimant. The Board questioned the evidentiary value and materiality of that doctor's testimony in terms applicable to the case here:

> In reaching his opinion as to the extent of claimant's injury and disability, Dr. Reid relied solely on claimant's subjective complaints. Subjective complaints are simply those complaints of pain and other symptoms which are related by the patient to the doctor. In response to questioning, Dr. Reid acknowledged that he had not relied on any objective findings in reaching his diagnosis. The evidentiary value of Dr. Reid's testimony in this regard is, therefore, questionable. . . . [T]he testimony of Dr. Reid cannot be relied on because of its equivocations and the failure of Dr. Reid to make any connection between claimant's injury and any subsequent physical impairments which claimant may have suffered. . . . Dr. Reid's testimony is also full of examples of his inability to state a definite opinion with regard to claimant's physical limitations. . . . In the Board's opinion,

medical evidence, such as Dr. Reid's testimony, which fails to state with any degree of certainty an opinion regarding claimant's injury and subsequent physical impairments does not constitute substantial evidence.

620 F.2d at 64–65 (quoting with approval the Board's opinion below).

As in *Bethlehem Steel*, the sole medical testimony favorable to Sylvester's claim was conditioned on his subjective complaints. Even if subjective complaints can, in appropriate cases, ground a finding of permanent disability, this is not such a case. None of the doctors were able to make an objective connection between these complaints and exposure to welding fumes. Dr. Middleton, although he grounded his recommendation regarding ventilation at least partially on Sylvester's medical history of complaints, specifically put Sylvester's level of permanent disability at "zero percent." *See supra* note 2. Given the medical testimony, substantial evidence supports neither the ALJ's determination that Sylvester was permanently partially disabled nor his determination that a restriction to well-ventilated welding jobs entails a disability equivalent to 11.3 percent of the claimant's pre-injury average weekly salary. Indeed, the only percentage disability estimate offered in the record is Dr. Middleton's "zero percent." We are accordingly unable to conclude that the Board exceeded its statutory reviewing authority under 33 U.S.C. § 921(b)(3) when it reversed these findings for lack of substantial evidence. As we noted in *Bethlehem Steel*:

> "[t]he substantiality of evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. N. L. R. B.*, 340 U.S. 474, 488, 71 S.Ct. 456, 464, 95 L.Ed. 456 (1951). The evidence supporting the decision or order under review "must do more than merely create a suspicion of the existence of facts upon which the order is based." *N. L. R. B. v. O. A. Fuller Super*

particular job being offered to this Claimant. This evidence does help to establish that a job

was available.

*Markets, Inc.*, 374 F.2d 197, 200 (5th Cir. 1967). In short, the review "is not to be a mere rubber-stamping of the [administrative law judge's] order when the reviewing Court is unable to conscientiously conclude that the evidence supporting such decision is substantial." *Goins v. Noble Drilling Corp.*, 397 F.2d 392, 394 (5th Cir. 1968).

620 F.2d at 64 (bracketed material in original). As in *Bethlehem Steel*, the Board did not engage in improper de novo review and properly considered the record as a whole.

AFFIRMED.