8 F.3d 175
 1994 A.M.C. 1811
 DIRECTOR, OFFICE OF WORKERS' COMPENSATION PROGRAMS, UNITED
STATES DEPARTMENT OF LABOR, Petitioner,
v.
NEWPORT NEWS SHIPBUILDING AND DRY DOCK COMPANY, Respondent,
v.
Jackie H. HARCUM, Claimant.
 No. 92-1864.
 United States Court of Appeals,
Fourth Circuit.
 Argued Feb. 5, 1993.
Decided Oct. 29, 1993.
 
 LuAnn Blanche Kressley, Office of the Sol., U.S. Dept. of Labor, Washington, DC, argued (Marshall J. Breger, Sol. of Labor, Carol A. De Deo, Associate Sol., Janet R. Dunlop, Counsel for Longshore, Office of the Sol., on brief), for petitioner.
 James Melvin Mesnard, Seyfarth, Shaw, Fair-Weather & Geraldson, Washington, DC, argued, for respondent.
 Before ERVIN, Chief Judge, NIEMEYER, Circuit Judge, and WARD, Senior United States District Judge for the Middle District of North Carolina, sitting by designation.
 OPINION
 ERVIN, Chief Judge:
 
 
 1
 Jackie Harcum ("Claimant"), a former employee of Newport News Shipbuilding & Dry Dock Company ("Newport News"), suffers from a work-related, disabling back injury. As an employee covered under the Longshore and Harbor Workers' Compensation Act ("LHWCA"), 33 U.S.C. §§ 901-950, the Claimant filed a request for compensation benefits, which was partially granted and denied. On appeal, the Director of the Office of Workers' Compensation Programs in the United States Department of Labor ("Director") challenges the Benefits Review Board ("Board") as to its construction of the LHWCA on two grounds. First, the Director asserts that the Board improperly determined that the Claimant's disability shifted from the status of temporary total disability to that of permanent partial disability on May 6, 1988. In addition, the Director challenges the Board's application of a provision of the LHWCA to lessen substantially Newport News's obligation to pay benefits and to shift responsibility for compensation to a special fund organized under the LHWCA. Because we believe the Director lacks standing to raise the first issue, we decline to address it. Finding, however, that the Board erred in implicating the special fund and that the Director is the proper party to redress improper uses of the fund, we reverse the Board's decision to limit Newport News's obligation to pay benefits.
 
 
 2
 * The Claimant worked for Newport News as a machine installer from February 26, 1963 until May 6, 1988. During his tenure with Newport News, the Claimant suffered a series of back injuries. According to his medical records, the Claimant sustained a lumbar strain on June 3, 1965, and a more severe lumbosacral strain on February 8, 1966. At the time of this second injury, an x-ray of the Claimant's back revealed a sacral arch defect. The Claimant again experienced a lumbar strain on February 7, 1977, and was unable to work from February 27, 1977 through March 28, 1977 as a result.
 
 
 3
 After two more related injuries in 1981 and 1983, the Claimant's physician referred him to a neurosurgeon. The neurosurgeon diagnosed the Claimant with a herniated disc in the cervical spine area and performed a hemilaminectomy on January 24, 1984 to remove the disc. The Claimant responded well to the surgery and was able to return to work on March 5, 1984. On October 24, 1984, the Claimant suffered the injury that serves as the subject of this appeal. While bending down in the bilge area of a steam barge, the Claimant was struck in the lower back by a piece of falling grating. After a month of unabated leg and back pain, the Claimant returned to the neurosurgeon. Tests revealed another herniated disc, this time in the lumbar spine area, and on January 11, 1985, the neurosurgeon removed the disc. On March 15, 1985, additional surgery was performed to free a pinched nerve root and remove retained fragments of disc material.
 
 
 4
 After a protracted recovery, the Claimant returned to light-duty work at Newport News on October 4, 1985, but immediately experienced back pain and was "passed out" of service temporarily to recuperate. Newport News paid the Claimant benefits under the LHWCA for temporary total and temporary partial disability until the Claimant again returned to Newport News's light duty facility in April 1987. On November 4, 1987, the Claimant's neurosurgeon formulated restrictions by which he could return to his regular department. The doctor rated the Claimant as having an eighteen-percent whole body impairment and restricted his lifting to thirty pounds. The Claimant also was to alternate regularly between sitting and standing and to refrain from ladder climbing.
 
 
 5
 The Claimant returned to his regular department in January 1988, but was unable to perform the necessary tasks. Therefore, on May 6, 1988, the Claimant was passed out of the shipyard once again. Newport News officials informed the Claimant that they would look for another job for him in the shipyard within his restrictions. The Claimant suggests that, based upon this reassurance, he did not look for a job outside of the shipyard at the time he was passed out. In August 1988, however, Newport News's supervisor of employee relations at the shipyard arranged a meeting with the Claimant. At the meeting, the Claimant was told that the shipyard had no work to offer him within his restrictions and that he was being referred to a rehabilitation counselor.
 
 
 6
 The Claimant met with the rehabilitation counselor for the first time on September 20, 1988, and the two began developing a job placement and rehabilitation program for the Claimant. The Claimant then started his search for a new job. After following several leads supplied by the rehabilitation counselor, the Claimant was able to secure a job with the Hampton Sheet Metal Company ("Hampton Sheet Metal") on February 16, 1989. The Claimant still works at Hampton Sheet Metal in a job that is comfortably within his disability restrictions. At the time of the hearing on this matter before the Administrative Law Judge ("ALJ"), the Claimant was earning $5.00 per hour and working forty hours per week. Subsequent to the Claimant's employment by Hampton Sheet Metal, Newport News requested that the rehabilitation counselor conduct a labor survey of the available jobs for which the Claimant may have qualified during the period of May 6, 1988 to February 15, 1989. The completed survey listed eleven job possibilities.
 
 
 7
 The Claimant filed a request for compensation benefits under the LHWCA, and a hearing was held before an ALJ on October 20, 1989. In addition to the above facts, the parties presented medical opinions of three doctors. A doctor opined, at Newport News's behest, that
 
 
 8
 [i]t is obvious that Mr. Harcum's current low back condition was not caused by any one injury. Rather, it is clear that Mr. Harcum's current low back condition is the result of cumulative and repeated lumbar injuries. Each injury aggravated Mr. Harcum's low back problems and made him more susceptible to further back injuries, and each injury increased the severity of the subsequent injuries. This clearly constitutes a pre-existing permanent partial disability, and a cautious employer would not have hired Mr. Harcum with this manifest condition.
 
 
 9
 Additionally, Mr. Harcum's cervical spine condition also substantially contributes to his current level of disability. As a result of shoulder injuries in 1981 and 1983, surgery was performed on Mr. Harcum's cervical spine. As I noted previously, this equates to a five percent (5%) whole body impairment. I agree with Dr. Peach's statement in his December 1, 1987 letter. Dr. Peach indicated that Mr. Harcum's level of whole body impairment is a result of two surgical procedures: the 1984 surgery on Mr. Harcum's cervical spine and the 1985 surgery on his lumbar spine. The cervical and lumbar injuries, and the surgery they necessitated, clearly combined to create a greater impairment than would otherwise have occurred. This condition was manifest in Mr. Harcum's clinical record, and a cautious employer would not have hired him with this condition.
 
 
 10
 Dr. Peach, the Claimant's neurosurgeon, indicated, in a December 1, 1987 letter, that the Claimant's permanent partial disability was due in part to both surgical procedures involving the Claimant's cervical and lumbar spinal areas. Another doctor opined that "[i]t is clear that Mr. Harcum had a pre-existing partial impairment or disability that was materially increased by the second injury and disc herniation."
 
 
 11
 After disposing of two issues not raised on this appeal, the ALJ addressed whether the Claimant was entitled to a temporary total disability award from May 6, 1988 until February 16, 1989. Citing Stevens v. Lockheed Shipbuilding Co., 22 BRBS 155, 157-59 (1989), the ALJ established the date of maximum medical improvement as the onset of permanent partial disability. As the parties had stipulated that date to be December 7, 1987, several months before the Claimant was passed out of the shipyard permanently, the ALJ determined that, for the purpose of benefit payments, permanent partial disability began when the Claimant was passed out or on May 6, 1988. Alternatively, the ALJ held that Newport News had shown successfully the availability of suitable alternate jobs that the Claimant was capable of performing from May 6, 1988 to February 15, 1989. Therefore, the Claimant's disability ceased to be a total disability on May 6, 1988, when the Claimant regained wage-earning capacity.
 
 
 12
 The ALJ concluded that, from May 6, 1988, the Claimant should have received compensation based on a permanent partial disability rather than a temporary total disability. Based on the improper classification, the Claimant had received $101.34 per week in excess benefits during the period from May 6, 1988 to February 16, 1989. The ALJ held that Newport News was entitled to a credit against future benefit payments owed to the Claimant in the amount of $101.34 per week for approximately forty weeks, the period of the overpayment.
 
 
 13
 The ALJ addressed, as the final issue, whether Newport News was entitled to a reduction in the benefits it was required to pay the Claimant pursuant to section 8(f) of the LHWCA, 33 U.S.C. § 908(f). Section 8(f) limits an employer's responsibility to pay disability benefits to one hundred and four weeks if the employee's work-related injury was substantially exacerbated by a pre-existing permanent partial disability. See id. § 908(f)(1). Finding that Newport News had established each of the elements needed to enjoy section 8(f) relief, the ALJ limited Newport News's obligation to pay weekly benefits to the Claimant accordingly.
 
 
 14
 The Director appealed the ALJ's decision to the Benefits Review Board as a "party in interest" pursuant to 33 U.S.C. § 921(b)(3). On appeal, the Board affirmed the ALJ's decision in all respects, but with one clarification. The ALJ had relied, for its determination of the commencement of partial disability, on Stevens v. Lockheed Shipbuilding Co., 22 BRBS 155 (1989), which the Ninth Circuit court of appeals subsequently reversed. Stevens v. Director, Office of Workers' Compensation Programs, 909 F.2d 1256 (9th Cir.1990), cert. denied sub nom. Lockheed Shipbuilding Co. v. Director, Office of Workers' Compensation Programs, 498 U.S. 1073, 111 S.Ct. 798, 112 L.Ed.2d 860 (1991). The Ninth Circuit court held that the date total disability becomes partial is the date on which the employer establishes that suitable alternate employment is available, not the date on which maximum medical improvement occurs. Id. at 1259-60. The Board vacated "the administrative law judge's reliance on the Board's decision in Stevens to commence claimant's award of benefits for permanent partial disability on May 6, 1988." The Board noted, however, that the ALJ alternatively held that May 6, 1988 was the proper date because Newport News had established job availability as of that date. On that basis, the Board affirmed the ALJ's decision.
 
 
 15
 The Director petitioned this court for review of the Board's decision pursuant to 33 U.S.C. § 921(c). The Director raises two issues on appeal: (1) whether the Board erred as a matter of law in accepting the ALJ's determination of the Claimant's injury status change from that of temporary total disability to that of permanent partial disability; and (2) whether, in determining Newport News's entitlement to section 8(f) relief, the Board applied the incorrect standard.
 
 II
 
 16
 The ALJ is the only adjudicative body handling a benefits determination that may make factual findings. See Lavino Shipping Co. v. Donovan, 267 F.2d 59, 61-62 (3d Cir.1959). Therefore, the Board's review of the ALJ's factual findings is limited by the statutory requirement that "[t]he findings of fact in the decision under review by the Board shall be conclusive if supported by substantial evidence in the record considered as a whole." 33 U.S.C. § 921(b)(3). We review the Board's decision for errors of law and to ascertain whether the Board adhered to its statutorily-mandated standard for reviewing the ALJ's factual findings. Newport News Shipbuilding & Dry Dock Co. v. Tann, 841 F.2d 540, 543 (4th Cir.1988).
 
 
 17
 The Board's adjudicatory interpretation of the LHWCA is entitled to no special deference because the Board serves no policy-making role. See Zapata Haynie Corp. v. Barnard, 933 F.2d 256, 258 (4th Cir.1991). The Director is charged with administration of the LHWCA; therefore, we should respect a reasonable interpretation of the LHWCA by the Director. See id.; Newport News Shipbuilding & Dry Dock Co. v. Howard, 904 F.2d 206, 209 (4th Cir.1990). We are guided by Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837, 842-43, 104 S.Ct. 2778, 2781-82, 81 L.Ed.2d 694 (1984) when deciding whether to accept a reasonable interpretation of the LHWCA advocated by the Director. Zapata, 933 F.2d at 258; Howard, 904 F.2d at 208. Absent clear congressional intent as to the proper construction of the LHWCA, we must give deference to the Director's reasonable and permissible interpretation. Zapata, 933 F.2d at 259; Howard, 904 F.2d at 209.
 
 
 18
 Before reviewing the Board's determinations, however, we must address whether the Director has standing to petition this court for review of the issues raised.[1] The LHWCA permits "[a]ny person adversely affected or aggrieved by a final order of the Board [to] obtain a review of that order in the United States court of appeals for the circuit in which the injury occurred." 33 U.S.C. § 921(c). Unlike the provision of the LHWCA permitting "any party in interest" to seek review before the Board, id. § 921(b)(3), section 921(c) requires that the appellant be a "person ... aggrieved," id. § 921(c), or a party that has suffered an injury in fact, economic or otherwise. See Director, Office of Workers' Compensation Programs v. Newport News Shipbuilding & Dry Dock Co., 676 F.2d 110, 113 (4th Cir.1982). We must decide whether the issues raised on appeal represent an actual injury to the Director.
 
 
 19
 The Fifth Circuit court of appeals was the first circuit court to address the extent of the Director's standing to appeal pursuant to 33 U.S.C. § 921(c). See Director, Office of Workers' Compensation Programs v. Donzi Marine, Inc., 586 F.2d 377 (5th Cir.1978). In Donzi Marine, the Director questioned the extent to which the LHWCA applied to the employees of small boat builders, marine operators, and other firms in the recreational boating industry. Id. at 377. The court recognized that, before it could address the merits of the appeal, it must resolve "whether the Director, the sole petitioner, is 'adversely affected or aggrieved' by the Board's decision [not to award benefits] as required by section 921(c)." Id. at 379 (quoting 33 U.S.C. § 921(c)).
 
 
 20
 The Donzi Marine court began its analysis by outlining the responsibilities conferred upon the Director by the LHWCA. The court concluded that the Director would have standing only if an interest of the Director arising from his or her specifically delegated responsibilities was adversely affected by the Board's decision. Id. The LHWCA confers four responsibilities upon the Director: (1) the performance of an assortment of general administrative and supervisory responsibilities, e.g., 33 U.S.C. §§ 906(b)(3), 907, 914, 919, 923(b), 930, 932; (2) the provision of assistance to persons covered by the LHWCA in processing their claims and receiving compensation, id. § 939; (3) the promulgation and enforcement of safety rules and regulations, id. § 941; and (4) the duty to administer the special fund established for the payment of certain benefits, id. § 944. See Donzi Marine, 586 F.2d at 379-80.
 
 
 21
 The court suggested that the nature of the Director's responsibilities presented two avenues by which the Director might have standing to petition for appellate review. First, the Director may redress Board decisions that adversely affect the Director's legitimate administrative interests. Id. at 381. For example, if a Board decision substantially augmented the nature of the administrative duties delegated to the Director, increased the Director's necessary expenditure of administrative resources, or created confusion as to how the Director was to carry out specific functions, the Director's responsibilities under the LHWCA would be bound up sufficiently with the merits of the appeal to evidence a cognizable administrative injury. Id. at 381-82.
 
 
 22
 In addition, the Director may seek review of a Board decision adversely impacting the special fund created to pay employees in certain instances in which the employer is relieved of that obligation. Id. at 380-81; see 33 U.S.C. § 944. If the Board's decision favors payment out of the fund as opposed to by the employer, the depletion of the fund represents an injury in fact to the Director as administrator of the fund.
 
 
 23
 The Donzi Marine court determined that, under the facts at hand, neither the Director's legitimate administrative interests nor his or her pecuniary interest in protecting the fund was implicated. Id. at 380-82. Therefore, the court held that
 
 
 24
 [the Director] does not meet the standing requirement imposed by section 921(c) and may not, on his own initiative and without the company of the claimant, petition to review the Board's decision to this court. At bottom, the Director appears here to claim no more than an interest in receiving from the Board an interpretation of the [LHWCA]'s coverage consistent with his own belief as to what that coverage should be. The mere fact that the Board has chosen not to accept the Director's view does not aggrieve the Director in any meaningful sense and, hence, cannot give him standing to appeal. We are unable, therefore, under the statute to render the advisory legal opinion which the Director seeks by his petition to this court.
 
 
 25
 Id. at 382; see also Director, Office of Workers' Compensation Programs v. Bethlehem Steel Corp., 620 F.2d 60, 63 (5th Cir.1980) (holding that Director is not a person "adversely affected or aggrieved" by an order of the Board which denies disability payments under the LHWCA); but see Shahady v. Atlas Tile & Marble Co., 673 F.2d 479, 483 (D.C.Cir.1982) ("[T]he Director's general supervisory and enforcement interest, apart from any pecuniary interest, is sufficient to confer upon the Director standing to file a petition for review under section 921(c).").
 
 
 26
 We adopted the clear logic of the Fifth Circuit court's Donzi Marine holding in Director, Office of Workers' Compensation Programs v. Newport News Shipbuilding & Dry Dock Co., 676 F.2d 110 (4th Cir.1982).[2] In that case, we faced an appeal by the Director of the Board's decision that section 8(f) of the LHWCA limited the employer's duty to pay benefits to one hundred and four weeks. Id. at 112. Before addressing the merits of the applicability of the section 8(f) limitation, we questioned whether the Board's decision sufficiently implicated an administrative or economic interest of the Director so as to give rise to a redressable injury. The Board's decision would allow the employee to draw benefits from the LHWCA's special fund after one hundred and four weeks of employer compensation. We recognized that "the Director has an obligation to protect [the fund] from unjustified claims," id. at 113, and, therefore, that the Director may be best situated to complain when the fund is at risk of being improperly accessed, id. at 114. Noting that this grievance represented a valid injury, we held that
 
 
 27
 the fact that the Director in this case has an additional interest in protecting the fiscal integrity of the special fund convinces us that the Director has standing to appeal the Board's decision.
 
 
 28
 Id.
 
 
 29
 Applying this analysis to the facts of the case at hand, we acknowledge that the Director clearly has standing to pursue an appeal on the applicability of the section 8(f) limitations pursuant to our holding in Director, Office of Workers' Compensation Programs v. Newport News Shipbuilding & Dry Dock Co., 676 F.2d 110, 114 (4th Cir.1982). The appealability of the first issue--the timing of the onset of partial disability--is more problematic. The Director asserts that the Board misapprehended the LHWCA's requirements for a determination of partial disability. The Director's claim challenges the Board's construction of the LHWCA, but does not press the remediation of an administrative or economic injury suffered by the Director directly. The Board's construction of partial disability commencement does not alter the Director's ability to carry out his or her responsibilities under the LHWCA or to protect the fiscal integrity of the special fund.[3]
 
 
 30
 We hold, therefore, that the Director has not presented a cognizable injury through the appeal of the partial disability issue and that we must refrain from addressing the merits of this issue based on the Director's lack of standing to raise it.
 
 III
 
 31
 Turning to the merits of this appeal for which the Director has standing, we confront the issue whether, in determining Newport News's entitlement to section 8(f) relief, the Board applied the incorrect standard.
 
 
 32
 Section 8(f) of the LHWCA serves to limit the amount of benefits an employer must pay an employee for a work-related injury when the injury was preceded by a permanent partial disability. The section provides, in pertinent parts:
 
 
 33
 (f) Injury increasing disability:
 
 
 34
 (1) In any case in which an employee having an existing permanent partial disability suffers an injury, the employer shall provide compensation for such disability as is found to be attributable to that injury based upon the average weekly wages of the employee at the time of the injury.... In all other cases of total permanent disability or of death, found not to be due solely to that injury, of an employee having an existing permanent partial disability, the employer shall provide ... compensation payments or death benefits for one hundred and four weeks only....
 
 
 35
 In all other cases in which the employee has a permanent partial disability, found not to be due solely to that injury, and such disability is materially and substantially greater than that which would have resulted from the subsequent injury alone, the employer shall provide ... compensation for one hundred and four weeks only.
 
 
 36
 33 U.S.C. § 908(f)(1). In other words, when an employee, who has a pre-existing permanent partial disability, sustains an additional work-related injury that results in permanent partial disability, the employer must provide compensation for one hundred and four weeks only, if: (1) the ultimate permanent partial disability is due to both the work-related injury and the pre-existing partial disability, and; (2) the ultimate permanent partial disability is materially and substantially greater than a disability from the work-related injury alone would be.[4]
 
 
 37
 To establish section 8(f) relief, the employer must show that the employee had a pre-existing permanent partial disability and that this disability was manifest to the employer prior to the subsequent work-related injury.[5] The employer also must establish that the subsequent work-related injury alone would not have caused the employee's ultimate permanent partial disability and that the ultimate permanent partial disability materially exceeds the disability which would have resulted in the absence of the pre-existing permanent partial disability. See id.; Director, Office of Workers' Compensation Programs v. Newport News Shipbuilding & Dry Dock Co., 676 F.2d 110, 114 (4th Cir.1982).
 
 
 38
 The parties agree that the Claimant suffered from a pre-existing permanent partial disability and that the disability was manifest to the employer. The parties disagree, however, on the contribution element. Newport News advances the Board's decision that the section 8(f) limitation is available only when the employee's pre-existing permanent partial disability combines with the disability caused by the employee's subsequent injury "to cause a greater degree of impairment than that caused by the second injury alone." In other words, Newport News contends that an employer may seek section 8(f) relief any time a pre-existing permanent partial disability exists and contributes to a subsequent work-related injury.
 
 
 39
 The Director asserts that the section 8(f) limitation is available only when the employee's pre-existing permanent partial disability causes the employer to incur more compensation liability than it would had the employee not been disabled at the time of the subsequent work-related injury. The Director suggests the analysis should involve comparing a healthy employee to an employee with the pre-existing permanent partial disability. If a healthy employee's level of disability would be similar to the disabled employee's after suffering the subsequent work-related injury, then the pre-existing permanent partial disability does not make the ultimate disability materially and substantially greater.
 
 
 40
 The parties' interpretations of section 8(f) differ in how they define the word "disability." Newport News's position requires the equation of "disability" with "impairment." Thereby, an employee's preexisting permanent partial disability contributes to a subsequent work-related injury if it causes the employee to suffer a greater level of physical impairment. In this case, greater impairment was demonstrated by the testimony of Dr. Harmon, who opined that the Claimant's cervical spine surgery resulted in a five-percent whole body impairment. He further suggested that this five-percent impairment joined with the subsequent lumbar injury "to create a greater impairment than would otherwise have occurred."
 
 
 41
 The Director's position utilizes the statutory definition of "disability" to construe section 8(f). The LHWCA defines "disability" as an "incapacity because of injury to earn the wages which the employee was receiving at the time of injury in the same or any other employment." 33 U.S.C. § 902(10). Grafting this definition of disability into section 8(f) renders the following construction. The employer only should benefit from the section's limitation when the employee's pre-existing permanent partial disability contributes to the ultimate permanent partial disability to decrease the employee's overall wage-earning capacity. The Director contends that, if the pre-existing permanent partial disability only causes the ultimate permanent partial disability to be more physically impairing, but does not decrease the employee's overall capacity to earn, then the pre-existing permanent partial disability does not cause the ultimate disability to be "materially and substantially greater than that which would have resulted from the subsequent injury alone." 33 U.S.C. § 908(f)(1).
 
 
 42
 We reject both parties' constructions of section 8(f). Newport News's and the Board's interpretations require a showing that the pre-existing permanent partial disability combined with the Claimant's subsequent work-related injury to cause a greater degree of impairment than that which would have been caused by the work-related injury alone. Under Newport News's purported interpretation, an employer need only show medical evidence that a percentage of whole body impairment existed before the work-related injury, that a greater percentage of whole body impairment exists after the work-related injury, and that the ultimate permanent partial disability was causally connected to the earlier impairment to satisfy its burden on the contribution element.[6] This showing eviscerates the requirement from section 8(f) that the ultimate permanent partial disability be materially and substantially greater than a disability from the work-related injury alone would be, by overlooking the possibility that the work-related injury alone could cause virtually the same level of disability as that manifested in the ultimate permanent partial disability through the contribution of the pre-existing permanent partial disability.
 
 
 43
 The Director suggests an interpretation of section 8(f) that allegedly will address the magnitude of the relationship between the ultimate permanent partial disability and a disability arising from the work-related injury alone. By requiring the employer to show that it incurs a larger compensation liability based on the ultimate permanent partial disability, the Director contends that the employer will establish that the ultimate permanent partial disability must be materially and substantially greater than that which would have resulted from the work-related injury alone. The Director's construction of section 8(f) involves a mechanical grafting of the statutory definition of disability found at 33 U.S.C. § 902(10) into the language of section 8(f), an approach rejected by the Supreme Court in Lawson v. Suwannee Fruit & Steamship Co., 336 U.S. 198, 206, 69 S.Ct. 503, 507, 93 L.Ed. 611 (1949).[7]
 
 
 44
 Because we find Newport News's construction of section 8(f) to overlook a basic premise of the section and we are compelled by Lawson v. Suwannee Fruit & Steamship Co.[8] to reject the Director's construction, we now turn to the task of discerning independently the reading of section 8(f) by which the Board and the ALJ are governed. To do this, we look again at the language of the statute:
 
 
 45
 (f) Injury increasing disability:
 
 
 46
 (1) In any case in which an employee having an existing permanent partial disability suffers an injury, the employer shall provide compensation for such disability as is found to be attributable to that injury based upon the average weekly wages of the employee at the time of the injury.... In all other cases of total permanent disability or of death, found not to be due solely to that injury, of an employee having an existing permanent partial disability, the employer shall provide ... compensation payments or death benefits for one hundred and four weeks only....
 
 
 47
 In all other cases in which the employee has a permanent partial disability, found not to be due solely to that injury, and such disability is materially and substantially greater than that which would have resulted from the subsequent injury alone, the employer shall provide ... compensation for one hundred and four weeks only.
 
 
 48
 33 U.S.C. § 908(f)(1) (emphasis added).
 
 
 49
 To establish section 8(f) relief when an employee is permanently totally disabled, the employer must establish: (1) that the employee seeking compensation had an "existing permanent partial disability" before the occurrence of the work-related injury; (2) that the pre-existing permanent partial disability was manifest to the employer; and (3) that the ultimate permanent total disability is "not [ ] due solely to th[e work-related] injury." Id.; see Director, Office of Workers' Compensation Programs v. Newport News Shipbuilding & Dry Dock Co., 676 F.2d 110, 114 (4th Cir.1982). When an employee is permanently partially disabled, but not totally disabled, section 8(f) informs us that the employer must make the additional showing that the ultimate permanent partial disability "is materially and substantially greater than that which would have resulted from the subsequent injury alone." 33 U.S.C. § 908(f)(1); see also Two "R" Drilling Co. v. Director, Office of Workers' Compensation Programs, 894 F.2d 748, 750 (5th Cir.1990) (recognizing that a "heavier burden" is placed on the employer to obtain section 8(f) relief in the case of a permanently partially disabled employee).
 
 
 50
 To satisfy this additional prong of the contribution element, the employer must show by medical evidence or otherwise that the ultimate permanent partial disability materially and substantially exceeds the disability as it would have resulted from the work-related injury alone. A showing of this kind requires quantification of the level of impairment that would ensue from the work-related injury alone. In other words, an employer must present evidence of the type and extent of disability that the claimant would suffer if not previously disabled when injured by the same work-related injury. Once the employer establishes the level of disability in the absence of a pre-existing permanent partial disability, an adjudicative body will have a basis on which to determine whether the ultimate permanent partial disability is materially and substantially greater.
 
 
 51
 In this case, both the ALJ and the Board failed to require a showing of this "materiality prong" of the contribution element. We hold that, by not applying this component of the statutory standard, the ALJ and the Board erred as a matter of law in awarding section 8(f) relief to Newport News. In addition, we note that Newport News put on no evidence relevant to the "materiality prong."[9]
 
 IV
 
 52
 Concluding that the Director has no standing to raise the issue whether the Board erred as a matter of law in accepting the ALJ's determination of the Claimant's injury status change from that of temporary total disability to that of permanent partial disability, we decline to address that issue altogether. We reverse the ALJ's decision to assess the special fund for compensation payments to the Claimant after one hundred and four weeks of payments by Newport News pursuant to the provisions of section 8(f), and we remand for further proceedings before the ALJ not inconsistent with this opinion.
 
 
 53
 REVERSED AND REMANDED.
 
 
 
 [1]
 Although not raised by the parties, standing presents an issue of the very justiciability of the claims presented and strikes at the core of the constitutional limitations placed upon this court by Article III of the Constitution. In this case, the LHWCA codifies the constitutional requirement that limits standing to those persons who can allege "that they personally have suffered or imminently will suffer an injury." Erwin Chemerinsky, Federal Jurisdiction § 2.3.2, at 52 (1989); see 33 U.S.C. § 921(c). Before we can address the merits of the Director's appeal, we must determine whether this basic and nonwaivable mandate is met
 
 
 [2]
 We had decided previously that the Director is not a proper respondent in a petition for review under section 921(c), "although upon application and for good cause shown he may be permitted to intervene therein." I.T.O. Corp. v. Benefits Review Bd. (I.T.O. Corp. II), 563 F.2d 646, 648 (4th Cir.1977) (en banc) (adopting in full the view expressed in I.T.O. Corp. v. Benefits Review Bd. (I.T.O. Corp. I), 542 F.2d 903, 906-909 (4th Cir.1976) (en banc), vacated sub nom. Adkins v. I.T.O. Corp., 433 U.S. 904, 97 S.Ct. 2967, 53 L.Ed.2d 1088 (1977)). In I.T.O. Corp. I, we recognized that section 921(c) requires an injury in fact, economic or otherwise. 542 F.2d at 907. We held the Director's asserted stake--that "[h]e is directly affected in his official capacity by the correctness of the Board's decision involving the proper scope of coverage of the Act with whose administration he is charged"--was not sufficient to "confer upon the Director any specific interest in the proper administration of the Act." Id. at 907-08
 
 
 [3]
 The only conceivable way in which the special fund might be implicated is if Newport News becomes insolvent and is no longer able to make the payments required under the LHWCA. If such a plight should befall Newport News, the Secretary of Labor has the discretion to make payments from the special fund to the Claimant. See 33 U.S.C. § 918(b). The possibility that the fund will be accessed under these circumstances is too tenuous to represent an injury in fact to the Director. Additionally, the position that the Director presses on appeal would have an unfavorable effect on the fund if tapped pursuant to section 918(b). The Board's holding permits Newport News to credit its payments due to the Claimant by $101.34 per week for approximately forty weeks. If we were to reverse the Board's decision, on remand the ALJ could decide that the credit is not due at all or is available for a more limited number of weeks. A decision adjusting the credit downward would increase the aggregate amount of compensation that Newport News owes the Claimant; therefore, if Newport News were to become insolvent, the burden on the fund would be larger than possible under the Board's current decision. This possibility further emphasizes the absence of an injury to the Director resulting from the Board's decision to establish partial disability on May 6, 1988
 
 
 [4]
 For the remainder of this discussion, we will refer to the conditions giving rise to the first disability as the "pre-existing permanent partial disability"; the disability that serves as the basis for the current claim for benefits as the "ultimate permanent partial disability"; and the injury that culminated in the ultimate permanent partial disability as the "work-related injury."
 
 
 [5]
 Although section 8(f) itself does not require the employer's manifest knowledge of the initial injury, courts have added this requirement to further the policy behind the limitation provision. See, e.g., Newport News Shipbuilding & Dry Dock Co. v. Harris, 934 F.2d 548, 550-51 (4th Cir.1991); Lambert's Point Docks, Inc. v. Harris, 718 F.2d 644, 648 (4th Cir.1983). Section 8(f) operates to prevent employers from discriminating against disabled employees by firing or refusing to hire them based on the increased risk of work-related injury their pre-existing permanent partial disability poses. Courts have reasoned that if the employer has no knowledge of the pre-existing permanent partial disability, the employer cannot use it as a basis for discrimination; therefore, an employer must have known about a pre-existing permanent partial disability to seek relief from its impact on the ultimate permanent partial disability. See, e.g., Director, Office of Workers' Compensation Programs v. Newport News Shipbuilding & Dry Dock Co., 676 F.2d 110, 114 n. 5 (4th Cir.1982)
 
 
 [6]
 In support of its proposition, Newport News relies largely on our decisions in Director, Office of Workers' Compensation Programs v. Newport News Shipbuilding & Dry Dock Co., 737 F.2d 1295, 1298-99 (4th Cir.1984); Director, Office of Workers' Compensation Programs v. Newport News Shipbuilding & Dry Dock Co., 676 F.2d 110, 115 (4th Cir.1982); John T. Clark & Son of Maryland, Inc. v. Benefits Review Bd., 621 F.2d 93, 95-96 (4th Cir.1980); and Maryland Shipbuilding & Drydock Co. v. Director, Office of Workers' Compensation Programs, 618 F.2d 1082, 1085 (4th Cir.1980). We conclude that these cases are not relevant to the issues at hand, however, because they deal with an ultimate permanent total disability. An employer is entitled to section 8(f) relief from fully compensating a permanent total disability when "the employee is totally and permanently disabled, and the disability is found not to be due solely to that injury." 33 U.S.C. § 908(f)(1). Unlike the case of a permanent partial disability, under the circumstances of permanent total disability, the employer need not establish that the ultimate disability is materially and substantially greater than the disability otherwise would be due solely to the work-related injury
 
 
 [7]
 Lawson presented the issue whether, in an earlier but substantially similar version of section 8(f), the pre-existing permanent partial disability must be an economic disability. The claimant had experienced a previous noncompensable partial disability, and sought compensation for an ultimate permanent partial disability triggered by a subsequent work-related injury. Lawson v. Suwannee Fruit & S.S. Co., 336 U.S. 198, 199, 69 S.Ct. 503, 503, 93 L.Ed. 611 (1949). Recognizing that the LHWCA provides a statutory definition for disability, the Court noted that incorporation of this definition into section 8(f) would require the employer to pay total compensation, while applying a broader meaning to disability would implicate the special fund for a portion of the compensation benefits. Id. at 201, 69 S.Ct. at 504
 Pointing to Congress's intent in enacting section 8(f) to prevent employers from declining to hire or firing employees with disabilities of any nature that would put them at an increased risk of work-related injury, the Court stated:
 If we read the definition into § 8(f)(1) in a mechanical fashion, we create obvious incongruities in the language, and we destroy one of the major purposes of the second injury provision: the prevention of employer discrimination against handicapped workers. We have concluded that Congress would not have intended such a result.
 Id. at 201-02, 69 S.Ct. at 504-05. The Court went on to hold that "the term 'disability' was not used as a term of art in § 8(f)(1)." Id. at 206, 69 S.Ct. at 507.
 
 
 [8]
 Recently, the Supreme Court addressed the proper construction of similar terms appearing in different sections of the LHWCA. See Estate of Cowart v. Nicklos Drilling Co., 505 U.S. ----, 112 S.Ct. 2589, 120 L.Ed.2d 379 (1992). The Director suggests that this case should alter our application of Lawson. In Cowart, the Supreme Court was asked to construe the undefined term "person entitled to compensation" found in section 33(g)(1) of the LHWCA. Id., 505 U.S. at ----, 112 S.Ct. at 2592, at 386; see 33 U.S.C. § 933(g)(1). In rendering its construction, the Court noted it must consider other provisions of the LHWCA containing the same term. The Court rejected the Board's construction of section 33(g)(1), holding that
 [the Board] had adopted differing interpretations of the identical language in section 33(f) and 33(g). This result is contrary to the basic canon of statutory construction that identical terms within an Act bear the same meaning. The Board's willingness to adopt such a forced and unconventional approach does not convince us we should do the same.
 Cowart, 505 U.S. at ----, 112 S.Ct. at 2596, 120 L.Ed.2d at 391.
 While the Court's holding in Cowart serves to advance consistent construction of a single term throughout the LHWCA, it does not expressly disavow the Court's earlier position in Lawson as to the construction of section 8(f). Without clearer guidance from the Court, we continue to be bound by its precedent. Therefore, the Director's attempt to have us apply the LHWCA's statutory definition of "disability" to section 8(f) based on Cowart is in vain.
 
 
 [9]
 Newport News showed that the Claimant suffered from a pre-existing permanent partial disability in the cervical spine area that created a five percent whole body impairment. After the work-related injury at issue, the Claimant suffered an ultimate permanent partial disability that produced whole body impairment of eighteen percent. Newport News introduced the following evidence concerning the correlation between the ultimate permanent partial disability and the disability that would have resulted from the work-related injury alone:
 .... Mr. Harcum's cervical spine condition also substantially contributes to his current level of disability.... The cervical and lumbar injuries, and the surgery they necessitated, clearly combined to create a greater impairment than would otherwise have occurred.
 From this evidence, the ALJ concluded, and the Board affirmed, that the Claimant's pre-existing permanent partial disability combined with his subsequent work-related injury to cause a greater degree of disability than that which would have resulted solely from the work-related injury. This conclusion stops short of identifying whether the ultimate permanent partial disability is materially and substantially greater than a disability caused by the work-related injury only.