UNPUBLISHED

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 05-1781

NEWPORT NEWS SHIPBUILDING AND DRY DOCK
COMPANY,

Petitioner,

versus

STEVEN YOUNG; DIRECTOR, OFFICE OF WORKERS'
COMPENSATION PROGRAMS,

Respondents.

On Petition for Review of an Order of the Benefits Review Board.
(04-842)

Argued: May 24, 2006              Decided: September 8, 2006

Before WIDENER and DUNCAN, Circuit Judges, and Henry F. FLOYD,
United States District Judge for the District of South Carolina,
sitting by designation.

Affirmed by unpublished opinion. Judge Floyd wrote the majority
opinion, in which Judge Widener joined. Judge Duncan wrote a
separate opinion dissenting in part.

**ARGUED:** James Melvin Mesnard, SEYFARTH & SHAW, L.L.P., Washington,
D.C., for Petitioner. Matthew Harley Kraft, RUTTER MILLS, L.L.P.,
Norfolk, Virginia; Peter Brule Silvain, Jr., UNITED STATES
DEPARTMENT OF LABOR, Office of the Solicitor, Washington, D.C., for
Respondents. **ON BRIEF:** Howard M. Radzely, Solicitor of Labor,
Allen H. Feldman, Associate Solicitor, Mark A. Reinhalter, Counsel
for Longshore, UNITED STATES DEPARTMENT OF LABOR, Office of the

Solicitor, Washington, D.C., for Respondent Director, Office of Workers' Compensation Programs.

————————

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

FLOYD, District Judge:

This petition for review arises under a claim of benefits under the Longshore and Harbor Workers' Compensation Act (the Act). 33 U.S.C. § 901 et seq. Newport News Shipbuilding and Dry Dock Company (Newport News) files its petition asserting that: 1) the Benefits Review Board (Board) erred in concluding that the award of benefits to Claimant Steven Young (Young) for his thoracic outlet syndrome (TOS) and herniated cervical disc injuries was proper; 2) Young's herniated cervical disc condition is not work-related; and 3) Young should be limited to his scheduled award. In the alternative, Newport News asserts that it is entitled to section 8(f) relief, pursuant to 33 U.S.C. § 908(f). For the reasons set forth below, we affirm the decision of the Board.

I.

A.

This case arises from Young's employment as a welder with Newport News, which began on June 19, 1977. (J.A. at 90.) On February 25, 1988, Young injured his right wrist when a piece of company equipment fell on him. (J.A. at 211.) Young went to Newport News' medical clinic on March 2, 1988, (J.A. at 230), and selected Dr. Daryl Hodgkinson to treat his injury. (J.A. at 98.) Dr. Hodgkinson diagnosed a ganglion mass on Young's right wrist, (J.A. at 317) which he removed on April 4, 1988. (J.A. at 320.)

3

Dr. Hodgkinson subsequently certified that Young was able to return to "light-duty" work. (J.A. at 104-05.) On May 9, 1988, Young was cleared by Dr. Hodgkinson to take part in "full-duty" work with his right hand. (J.A. at 105.) He still had restrictions, however, on the use of his left hand. (J.A. at 105.) On March 25, 1988, after the wrist injury but before the surgery, Young sustained a left elbow contusion. (J.A. at 232.)

On July 20, 1988, while still working for Newport News, Dr. J. Paul Muizalaar diagnosed Young with TOS, a nerve damage syndrome that affected Young in both arms. (J.A. at 344.) Young ended his employment with Newport News on May 1, 1989. (J.A. at 80.)

On January 16, 1990, Dr. E.W. Winfrey performed a rib resection on Young to correct the TOS on his right side. (J.A. at 376-80.) Nevertheless, Young's TOS symptoms did not improve following the surgery. (J.A. at 385.) Treatment continued and the same symptoms became increasingly present on Young's left side. (J.A. at 385.) On May 3, 1994, Young underwent a second rib resection surgery for the TOS, this time on his left side. (J.A. at 111, 401-05.) On September 19, 1996, Dr. F. Noel Parent wrote a letter to the Workman's Compensation Department stating that, in his opinion, Young should be permanently restricted, including "no overhead work, no lifting over 10 lbs, and no work with his arms out straight." (J.A. at 418.) In January 2000, Dr. Jonathan

4

Partington performed surgery on Young to correct a herniated cervical disc. (J.A. at 484-86.)

B.

Young filed claims for his right wrist and left elbow injury in 1988, (J.A. at 210-13, 217-18.), for which Newport News agreed to pay ten percent for permanent partial disability. (J.A. at 220.) Young brought a claim against Newport News on the non-payment of bills related to his TOS and herniated cervical disc injuries and, on August 11, 2000, the Administrative Law Judge (ALJ) assigned to the case conducted a formal hearing on the suit. (J.A. at 9.)

By order dated February 12, 2001, the ALJ awarded Young compensation for all of his injuries, including the February 25, 1988, wrist injury, the March 25, 1988, elbow injury, the TOS, and the herniated cervical disc. (J.A. at 8-24.) In so doing, the ALJ found that the TOS and herniated cervical disc were both work-related. (J.A. at 19.) The ALJ also found Young to have permanent, partial disability. (J.A. at 23.) On February 26, 2001, Newport News filed a Motion to Reconsider, (J.A. at 26), which the ALJ denied on March 9, 2001. (J.A. at 27.)

Young appealed and Newport News cross-appealed the ALJ's order to the Board. (J.A. at 29.) Young contended that the ALJ erred in not granting temporary total disability from February 23, 1998, to

5

July 27, 2000. (J.A. at 30.) Newport News, on the other hand, asserted that the TOS and herniated cervical disc were not work-related injuries. (J.A. at 30.) In the alternative, Newport News argued that if the Board affirmed the ALJ's finding that the injuries were work-related, Newport News should be entitled to section 8(f) (J.A. at 30.)

The Board modified the ALJ's order to reflect that Young was entitled to temporary total disability from January 18, 2000, to July 27, 2000, vacated the ALJ's holding on the issue of whether Newport News had established availability of suitable alternate employment prior to July 27, 2000, and remanded the issue for further consideration by the ALJ. (J.A. at 36.) The Board affirmed the ALJ's holding on all other issues. (J.A. at 36.)

On remand, the ALJ held that Newport News had failed to satisfy its burden of establishing suitable alternate employment for Young between 1992 and 1998. Therefore, the ALJ ordered that although Newport News was entitled to a credit for benefits paid to Young between March 21, 1996, and September 19, 1996, it was not entitled to additional credits for benefits paid to Young between 1992 and 1998. (J.A. at 45.)

Newport News again appealed to the Board. In its October 31, 2003, order, the Board remanded the case to the ALJ solely for a determination of the suitability of certain positions for Young.

6

(J.A. at 56.)  The Board affirmed the ALJ's decision is all other respects.  (J.A. at 56.)

On remand, the ALJ held that Newport News had failed to establish that a range of suitable jobs existed prior to Young's January 2000 surgery and, thus, that it was not entitled to credits for benefits paid to Young between 1992 and 1998. (J.A. at 60.)

Once more, Newport News appealed the ALJ's holding to the Board, and on June 30, 2005, the Board affirmed the ALJ's decision. (J.A. at 64-65.)  Newport News now petitions this Court for review of the Board's holding.

## II.

In reviewing an issue decided by the Board, this Court's consideration is limited to whether the correct legal standards were properly applied in making the decision, whether the decision was supported by substantial evidence, and whether the decision was rational.  Zapata Haynie Corp. v. Barnard, 933 F.2d 256, 258 (4th Cir. 1991).  "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Substantial evidence is more than a scintilla but less than a preponderance."  Elliott v. Administrator, Animal & Plant Health Inspection Serv., 990 F.2d 140, 144 (4th Cir. 1993) (internal quotation marks and citations omitted).

## III.

7

Newport News first contends that Young is not entitled to compensation for his TOS or herniated cervical disc injuries because a formal claim was never filed. Nevertheless, the ALJ found, and the Board affirmed, "that the record clearly shows that [Newport News], through the various physicians to whom it referred [Young], subsumed under either of the 1988 claims all treatments and surgeries related to [Young's] TOS and cervical spine condition." (J.A. at 31.) We agree.

Pursuant to 33 U.S.C. § 913(a), a claimant must timely file a claim with the deputy commissioner in the compensation district in which the injury occurred. U.S Industries/Federal Sheet Metal, Inc. v. Director, OWCP, 455 U.S. 608, 613 (1982). Although the content of the claim is not specified in section 913(a), section 912(b) mandates that the claimant give the deputy commissioner and his employer notice of his injury and requires that "[s]uch notice . . . shall contain . . . a statement of the time, place, nature, and cause of the injury."[1] Id. (alterations in original). The claim "serves the purposes of notifying the adverse party of the allegations and of confining the issues to be tried and adjudicated." Id.

---

[1] "'This statement must be more than a mere declaration that the employee has received an injury or is suffering from an illness that is related to his employment; it must contain enough details about the nature and extent of the injury or disease to allow the employer to conduct a prompt and complete investigation of the claim so that no prejudice will ensue.'" Id. at 613 n.6 (quoting 1A E. Jhraid, A. Sann, N. Golden, & B. Chase, Benedict on Admiralty § 71, 4-5 (7th ed. 1981)).

Citing to 3 A. Larson, The Law of Workmen's Compensation § 78.10, 15-2 (1976), with approval, the U.S. Industries Court further noted the following:

> Professor Larson writes that an informal substitute for a claim may be acceptable if it identifies the claimant, indicates that a compensable injury has occurred, and conveys the idea that compensation is expected; that considerable liberality is usually shown in allowing amendment of pleadings to correct defects unless the effect is one of undue surprise or prejudice to the opposing party; and that wide latitude is allowed as to variance between pleading and proof, but if the variance is so great that the defendant is prejudiced by having to deal at the hearing with an injury entirely different from the one pleaded, the variance may be held fatal.

455 U.S. at 613 n.7. (citations, alterations and quotation marks omitted).

Turning now to the facts of this case, we observe that, on June 6, 1984, medical records from Newport News's physician state Young's diagnosis as a "Contusion Anterior Chest Wall." (J.A. at 226.) The cause of the chest wall injury is noted in the medical report as occurring while Young was carrying a thirty-pound load up a ladder. (J.A. at 226.) Another report submitted to Newport News on September 1, 1987, states as the diagnosis "Cervical Strain by history." (J.A. at 229.) The cause of the cervical strain is noted in the report as occurring when Young "was taking a welding machine off a unit. [T]he machine started to fall, I jerked my shoulder [and] neck when I tried to keep it from falling." (J.A. at 229.) Moreover, on Young's March 25, 1988, claim form, he states that he had a "pinched nerve on [his] left elbow." (J.A. at 218.) Viewed in the aggregate, these medical reports alone demonstrate that

9

Newport News was on notice of Young's TOS and cervical disc injuries.

In addition, the record is replete with other substantial evidence that supports the decision below. For instance, and as already observed, the ALJ found that the diagnosis of Young's TOS and herniated cervical disc, which were diagnosed while Young was being treated for the wrist and elbow injury, actually subsumed the claims. (J.A. at 31.) Furthermore, the ALJ found that,

> [t]he record does not reflect that any of the physicians, including the [Newport News] physicians, ever specifically told [Young] that the subsequent operations for [TOS] and cervical spine problems were not related to the two 1988 injuries for which he had filed claims. Nor does the record reflect that any physician specifically suggested to [Young] that these conditions may be independently work related and, as such, require separate claims for compensation.

(J.A. at 11 n.6.) "Moreover, the [ALJ] found that [Young] was unaware at the time that his treatment, including the surgeries, was not related to the two injuries for which he filed formal claims." (J.A. at 31.) Additionally, "it is clear that [Young] sought benefits for his pain, which merely originated with the wrist and elbow injuries claimed and which subsequently was diagnosed as other conditions. Thus, the [ALJ] rationally determined that [Newport News] was aware of claims for these conditions." (J.A. at 32.) In fact, Young's TOS and cervical disc injuries were covered under the paperwork of his wrist and elbow injuries; and "the claims before [the ALJ] encompassed all of [Young's] claims." (J.A. at 31.) Consequently, finding that the

10

Board properly employed the correct legal principles, that its decision is supported by substantial evidence, and that the decision is rational, we affirm the Board's conclusion that Young met the claim requirement for his TOS and cervical disc injuries, as set forth in the Act.

IV.

Newport News next argues that the awarding of benefits based on Young's cervical disc condition was improper because there is no evidence in the record that the injury was work-related.[2]  We are unconvinced.

Section 920(a) provides in pertinent part, "In any proceeding for the enforcement of a claim for compensation under this chapter it shall be presumed, in the absence of substantial evidence to the contrary . . . [t]hat the claim comes within the provisions of this chapter."  33 U.S.C. 920(a).  Therefore, after Young came forward with substantial evidence that his TOS and cervical disc injuries were work-related, and absent substantial evidence from Newport News to the contrary, the presumption remains that Young's claim "comes within the provisions of [the Act]."  <u>Universal Maritime Corp. v. Moore</u>, 126 F.3d 256, 262 (4th Cir. 1997).

---

[2]In Petitioner's Brief, Newport News contends that, "As early as September 4, 1991, Dr. Muizelaar indicated that [Young's] bilateral thoracic outlet syndrome is not work-related."  (Pet.'s Bf. 16 (citing J.A. at 355).)  Petitioner misreads Dr. Muizelaar's report.  In the report, Dr. Muizelaar states nothing regarding whether Young's TOS is work-related.

In the hearing before the ALJ, Newport News rested on the argument that neither Young's TOS nor his herniated cervical disc were related to the claimed elbow or wrist injury.  (J.A. at 19.) Nevertheless, Newport News failed to provide substantial evidence to overcome the presumption that the injuries were work-related. Accordingly, we conclude that the Board did not err in holding that the cervical disc injury was work-related.

V.

Newport News also contends that Young's injuries are permanent, that he is not totally disabled, and that he is limited to his scheduled award.  As noted above, however, and as found by the Board in its March 18, 2002, decision, Young's TOS and cervical spine conditions are work-related and therefore compensable.  (J.A. at 33.)  Moreover, Young's conditions are not covered by the schedule.  Consequently, we find that the Board did not err on these points.

VI.

Finally, as an alternative argument, Newport News asserts that if we determine that Young is entitled to the benefits detailed above, then Newport News should be allowed to seek section 8(f) relief.  We disagree.

When an employer demonstrates an entitlement to section 8(f) relief, then the Special Fund, administered by the Director of the

12

Office of Workers' Compensation Programs, United States Department of Labor, assumes the responsibility to pay the claimant's weekly disability benefits after the employer pays the first 104 weeks of permanent disability compensation.  33 U.S.C. §§ 908(f)(1) and 2(A), 944.  To qualify for the relief here, Newport News must establish three elements: (1) Young had a pre-existing permanent partial disability; (2) this disability was evident to Newport News prior to the subsequent work-related injury; and (3) Young's subsequent work-related injury alone would not have caused the ultimate extent of his disability.  Newport News Shipbuilding & Dry Dock v. Director, OWCP (Harcum), 8 F.3d 175, 182-83 (4th Cir. 1993).  In cases of permanent partial disability, there is a more substantial burden on the employer to establish that the ultimate permanent partial disability is materially and substantially greater than the disability from the subsequent work-related injury alone.  Id.

In Harcum, this Court described the employer's burden to establish contribution in a permanent partial disability case as a quantification requirement.  Id. at 185.  In essence, an employer "must present evidence of the type and extent of disability that the claimant would suffer if not previously disabled when injured by the same work-related injury."  Id.  Under this standard, Newport News failed to set forth the requisite quantification to compare impairment.

Specifically, Newport News's physician, Dr. James Reid, failed to quantify the type and extent of disability that Young would have

13

suffered from his TOS alone. (J.A. at 35.) Moreover, nowhere in the record nor in the proceedings before the ALJ or the Board does Newport News tangibly quantify Young's injuries from which a basis for pre-existing disability could be set. We agree with the Board's decision that, in the absence of such evidence, Dr. Reid's opinion is legally insufficient to satisfy the contribution requirement and, thus, that the granting section 8(f) relief to Newport News would be inappropriate. Furthermore, to the extent that Newport News contends that it should be allowed to reargue its position on remand, we find that such argument would serve no useful purpose.

## VII.

Accordingly, for the foregoing reasons, the judgment below is affirmed.

AFFIRMED

14

DUNCAN, Circuit Judge, dissenting in part:

Because Young failed to file either a formal or informal claim for LHWCA benefits for his thoracic outlet syndrome ("TOS") or cervical spine problems, I must respectfully dissent from Part III of the majority's opinion.

Under the LHWCA, an employee must file a claim to preserve his right to compensation. See 33 U.S.C. § 913(a). The claim "serves the purposes of notifying the adverse party of the allegations and of confining the issues to be tried and adjudicated." U.S. Indus./Federal Sheet Metal Inc. v. Director, OWCP, 455 U.S. 608, 613 (1982). The claim "must contain enough details about the nature and extent of the injury . . . to allow the employer to conduct a prompt and complete investigation of the claim so that no prejudice will ensue." Meehan Seaway Serv. Co. v. Director, OWCP, 125 F.3d 1163, 1167 (8th Cir. 1997).

Here, Young sought benefits for TOS and cervical spine problems, but he never filed a formal claim for either injury. Young did file formal claims for a wrist and elbow injury, neither of which were related to his TOS or cervical spine problems. J.A. 209, 216, 504, 515, 570. Moreover, Young never attempted to amend his formal claims to add TOS or cervical spine problems.

Young's failure to file formal claims for TOS or cervical spine problems is not necessarily fatal to recovery because "wide latitude is allowed as to variance between pleading and proof" in

15

LHWCA actions. <u>U.S. Indus./Federal Sheet Metal Inc.</u>, 455 U.S. at 613, n.7 (quotations omitted). However, "if the variance is so great that the defendant is prejudiced by having to deal at the hearing with an injury entirely different from the one pleaded, the variance may be held fatal." <u>Id.</u> Such a fatal variance exists here. The injuries listed on Young's claims were different from and unrelated to those for which he ultimately sought compensation. Given this complete disconnection between the pleadings and the proof, even a liberal pleading standard cannot save Young's claims.

Certainly, the Supreme Court has suggested that "an informal substitute for a claim may be acceptable if it 'identi[fies] the claimant, indicate[s] that a compensable injury has occurred, and convey[s] the idea that compensation is expected." <u>Id.</u> (quoting 3 A. Larson, The Law of Workmen's Compensation § 78.11, p. 15-9 (1976)) (alterations in original). Such an informal claim turns on whether an employer receives sufficient notice of the claim to offset any prejudice. <u>See</u> <u>id.</u> The majority appears to conclude that Newport News received sufficient notice of Young's injuries from his doctors to support such a claim. I must disagree.

While it is true that Young's doctors notified Newport News of the course of his treatment and his diagnoses, such notice alone is insufficient to state an informal LHWCA claim. The employer must receive notice that the employee intends to seek compensation for the injury. <u>Id.</u> Here, the record evinces no effort on Young's

16

part to notify Newport News that he expected compensation for his TOS or cervical spine problems. Instead, the record demonstrates that Young only sought compensation for two unrelated injuries. Although Newport News undoubtedly knew of the fact of Young's TOS and cervical spine problems, it had no notice that Young sought compensation therefor.

I do not believe, and find no support for the proposition, that the mere fact that "Newport News was on notice of Young's TOS and cervical disc injuries" [Maj. Op. at 10] alone constitutes a claim--even an informal one.